## GOLDSBY, *alias* Cherokee Bill, *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 620. Submitted October 21, 1895. — Decided December 2, 1895.

There is nothing in this case to take it out of the ruling in *Isaacs* v. *United States*, 159 U. S. 487, that an application for a continuance is not ordinarily subject to review by this court.

In the trial of a person accused of crime the exercise by the trial court of its discretion to direct or refuse to direct witnesses for the defendant to be summoned at the expense of the United States is not subject to review by this court.

*Moore* v. *United States*, 150 U. S. 57, 61, affirmed and applied to a question raised in this case.

While it is competent, if a proper foundation has been laid, to impeach a witness by proving statements made by him, that cannot be done by proving statements made by another person, not a witness in the case.

It is within the discretion of the trial court to allow the introduction of evidence, obviously rebuttal, even if it should have been more properly introduced in the opening, and, in the absence of gross abuse, its exercise of this discretion is not reviewable.

Rev. Stat. § 1033 does not require notice to be given of the names of witnesses, called in rebuttal.

If the defendant in a criminal case wishes specific charges as to the weight to be attached in law to testimony introduced to establish an alibi, he may ask the court to give them; and, if he fails to do so, the failure by the court to give such instruction cannot be assigned as error.

THE plaintiff was indicted on the 8th of February, 1895,

for the murder of Ernest Melton, a white man and not an Indian. The crime was charged to have been committed at the " Cherokee Nation in the Indian country on the 18th day of November, 1894." Prior to empanelling the jury on the 23d of February, 1895, the accused filed two affidavits for continuance until the next term of court. The first, filed on the 12th of February, 1895, based on the ground that for some time prior to the finding of the indictment the defendant had been in jail, was sick, and unable properly to prepare his defence, and that he was informed if further time were given him, there were witnesses, whose names were not disclosed in the application, who could be produced to establish that he was not guilty as charged. This was overruled. The second was filed on the 22d day of February, upon the ground that four witnesses, whom the court had allowed to be summoned at government expense, were not in attendance, and that there were others, whose names were given, who could prove his innocence, and who could be produced if the case were continued until the next term of court; the affidavit made no statement that the four witnesses had been actually found at the places indicated, and gave no reason for their non-attendance, and asked no compulsory process to secure it.

Before the trial the accused filed three requests for leave to summon a number of witnesses at government expense. The first was made on the 12th of February, and asked for twenty-five; the affidavit made by the accused gave the names of the witnesses and the substance of what was expected to be proven by them. The court allowed fifteen. Of the ten witnesses disallowed, two were government witnesses, and were already summoned; seven were the wives of witnesses whom the court ordered summoned, the affidavit stating that the husband and wife were relied on to prove the same fact; the other witness disallowed, the affidavit disclosed, was also relied on simply to corroborate the testimony of some of the witnesses who were allowed. The second request was made on the 16th of February, asking for six witnesses, all of whom were ordered to be summoned. The third request was made on the 19th of February for two additional witnesses, one Harris and wife.

This application was refused, both being government witnesses.

On the trial the uncontradicted testimony on behalf of the government was that at about noon, on the day stated, two men robbed a store at a town in the Indian Territory, and that during the course of the robbery the murder was committed by one of those engaged therein. The testimony for the prosecution tended to identify the accused not only as having been one of the robbers, but also as being the one by whom the murder was committed. The testimony for the defence tended to disprove that of the government, which identified the accused, and tended, moreover, by proof of an alibi, to demonstrate the impossibility of the offence having been committed by him. There was a verdict of guilty as charged. The defendant brought the case by error here.

*Mr. William M. Cravens* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

There are fourteen assignments of error. Two address themselves to the refusal of the court to grant the applications for continuance; three to the action of the court in denying the request to summon certain witnesses at government expense; four relate to rulings of the court, admitting or rejecting testimony; and, finally, five to errors asserted to have been committed by the court in its charge to the jury. We will consider these various matters under their respective headings.

In a recent case we said: "That the action of a trial court upon an application for continuance is purely a matter of discretion not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question." *Isaacs v. United States,* 159 U. S. 487, and authorities there cited. We can see nothing in the action on the applications for continu-

ance, which we have recited in the statement of facts, to take it out of the control of this rule. The contention at bar that because there had been no preliminary examination of the accused, he was thereby deprived of his constitutional guarantee to be confronted by the witnesses, by mere statement demonstrates its error.

There was likewise no error in the action of the court in relation to the various requests to summon witnesses at government expense; on the contrary, the fullest latitude was allowed the accused. Were it otherwise, the right to summon witnesses at the expense of the government is by the statute, Rev. Stat. § 878, left to the discretion of the trial court, and the exercise of such discretion is not reviewable here. *Crumpton* v. *United States*, 138 U. S. 361, 364.

There was proof showing that at the time of the robbery a watch charm had been taken by the accused from one of the persons present in the house which was robbed. This charm was produced by a witness for the prosecution, who testified that it had been given him by one Verdigris Kid, whom the testimony tended to show had participated in the robbery; that this giving of the charm to the witness had taken place in the presence of the accused; that at the time it was given the fact of the robbery was talked of by the accused, he saying: "That he had made a little hold up and got about one hundred and sixty-four dollars as well as I remember, and that he had shot a fellow, I believe." To the introduction of the watch charm objection was made. We think it was clearly admissible and came directly under the rule announced in *Moore* v. *United States*, 150 U. S. 57, 61. John Schufeldt, the son of the man whose store was robbed, in his testimony on behalf of the government, identified the accused not only as one of the robbers but also as the one by whom the murder was committed. He was asked, on cross-examination, whether he had heard his father, in the presence of a Mr. John Rose, say that the robbers were, one an Indian, and the other a white man. He answered that he did not recollect hearing him make such a statement. On the opening of the defendant's case, Schufeldt was recalled for further cross-examination, and the question was again asked

him, he replying to the same effect, thereupon the defence put Rose upon the stand to testify to the conversation had by him with the father of Schufeldt in his (John Schufeldt's) presence, the father not being a witness in the cause. On objection the testimony was excluded on the ground, that whilst it would be competent if the proper foundation had been laid to impeach the witness, by proving statements made by him, it was incompetent to affect his credibility by proving statements made by another person, not a witness in the case. The ruling was manifestly correct.

The government called a witness in rebuttal, who was examined as to the presence of the defendant at a particular place, at a particular time, to rebut testimony which had been offered by the defendant to prove the alibi upon which he relied. This testimony was objected to on the ground that the proof was not proper rebuttal. The court ruled that it was, and allowed the witness to testify. It was obviously rebuttal testimony; however, if it should have been more properly introduced in the opening, it was purely within the sound judicial discretion of the trial court to allow it, which discretion, in the absence of gross abuse, is not reviewable here. *Wood* v. *United States*, 16 Pet. 342, 361; *Johnston* v. *Jones*, 1 Black, 209, 227; *Commonwealth* v. *Moulton*, 4 Gray, 39; *Commonwealth* v. *Dam*, 107 Mass. 210; *Commonwealth* v. *Meaney*, 151 Mass. 55; *Gaines* v. *Commonwealth*, 50 Penn. St. 319; *Leighton* v. *People*, 88 N. Y. 117; *People* v. *Wilson*, 55 Michigan, 506, 515; *Webb* v. *State*, 29 Ohio St. 351; Wharton's Criminal Pleading and Practice, § 566; 1 Thompson on Trials, § 346, and authorities there cited.

During the course of defendant's evidence, and before he had closed his case, testimony was elicited on the subject of the defendant's hat, the purpose of which tended to disprove some of the identifying evidence given on the opening of the case. When this was adduced the prosecuting officer notified the defence that he would be obliged to call in rebuttal one Heck Thomas.

At a subsequent period in the trial Heck Thomas was sworn. As he was about to testify objection was made, as follows:

" Counsel for defendant: We were going to object to Mr. Thomas being sworn. We now object to his being examined as a witness, on the ground that under the statute the defendant is required to have forty-eight hours' notice of witnesses to be used by the government, and we have had no notice of an intention to use Mr. Thomas as a witness.

" The Court: The court has always held if it is in rebuttal it is absolutely impossible to give the defendant notice of the witness. If that is the rule, that we have to give forty-eight hours' notice to the defendant of witnesses to be used in rebuttal, it would simply amount to a defeat of justice and a defeat of a trial altogether. The reason of the rule is very manifest, but when it comes to facts that are purely in rebuttal no notice can be given, because it is impossible.

" Counsel for defendant: Of course I understand the position of the court, but we simply want to discharge what we thought our duty in this matter, and we except to any statement of what the witness will prove, and we except to the use of the witness. We do not think it is competent either in chief or rebuttal, and therefore we waive an exception to the whole pleading.

" The Assistant District Attorney: The facts I want to establish by Mr. Thomas are about these: That he, in attempting to capture the defendant, had a fight with him on the 16th of November. A witness for the defendant was on the stand and the court remembers what he says about the time he saw the defendant, a week after the Frank Daniel fight. We propose to show the date of that fight, which will be the 16th of November, and also as to the kind of hat the defendant was wearing, and that he had at that time a wire cutter in his possession.

" Counsel for defendant: The wire cutter part would certainly not be rebuttal.

" The Assistant District Attorney: Yes, it is, because they have introduced evidence to show that this country was covered with wire fences."

Conceding that the facts as to which the witness was called to testify were matters of rebuttal, the absence of the notice

required, Rev. § Stat. 1033, did not disqualify him. The provision of the statute is that "when any person is indicted for treason, a copy of the indictment and a list of the jury, and of the witnesses to be produced on the trial for proving the indictment, . . . shall be delivered to him at least three entire days before he is tried for the same." The next sentence in the section makes the foregoing applicable to capital cases, but reduces the time to two entire days before the trial. The words "for proving the indictment," and the connection in which they are used, clearly refer to the witnesses relied upon by the prosecution to establish the charge made by the indictment. They do not extend to such witnesses as may be rendered necessary for rebuttal purposes resulting from the testimony introduced by the accused in his defence. Indeed, that they do not apply to rebuttal is obvious from the very nature of things, for if they did, as was well said by the trial judge, it would be impossible to conduct any trial. Upon state statutes containing analogous provisions the authorities are free from doubt. *State* v. *Gillick*, 10 Iowa, 98; *State* v. *Ruthven*, 58 Iowa, 121; *State* v. *Huckins*, 23 Nebraska, 309; *Gates* v. *The People*, 14 Illinois, 433; *Logg* v. *The People*, 92 Illinois, 598; *State* v. *Cook*, 30 Kansas, 82; *Hill* v. *The People*, 26 Michigan, 496.

That the testimony, as to the hat, sought to be elicited from the witness Thomas was purely rebuttal is equally clear. This is also the case with regard to the testimony as to the wire cutter. The defence in its attempt to make out the alibi introduced testimony tending to show that the defendant at a given time was many miles from the place of the murder, and that by the public road he could not have had time to reach this point, and have been present at the killing. In order to prove that he could not have reached there by any other more direct route than the public road, one of his witnesses had testified that the country was covered with wire fences. It was competent to show in rebuttal of this statement that the accused was in possession of a wire cutter, by which the jury could deduce that it was possible for him to travel across the country by cutting the fences. Of course the weight to be

attached to the proof was a matter for the jury, but it was clearly rebuttal testimony, and its admissibility as such is covered by the ruling in *Moore* v. *United States, ubi supra.*

The four errors assigned as to the charge of the court do not complain of the charge intrinsically but are based upon the assumption that, although correct, it was misleading and tended to cause the jury to disregard the testimony offered by the defendant to establish an alibi. But the charge in substance instructed the jury to consider all the evidence and all the circumstances of the case, and if a reasonable doubt existed to acquit. If the accused wished specific charges as to the weight in law to be attached to testimony introduced to establish an alibi, it was his privilege to request the court to give them. No such request was made, and, therefore, the assignments of error are without merit. *Texas & Pacific Railway* v. *Volk,* 151 U. S. 73, 78.

*Affirmed.*