## GRAY v. EASTMAN KODAK CO. et al.
### No. 15,306.

District Court, E. D. Pennsylvania.
July 13, 1932.

Leon Edelson, A. R. Clapp, and Thomas Raeburn White (of White, Schnader, Maris & Clapp), all of Philadelphia, Pa., for plaintiff.

Allen Hunter White and Boyd Lee Spahr (of Ballard, Spahr, Andrews & Ingersoll), both of Philadelphia, Pa., and Charles W. Riley, Geo. E. Middleton, and Wm. H. Davis (of Pennie, Davis, Marvin & Edmonds), all of New York City, for defendants.

KIRKPATRICK, District Judge.

This is an action at law for patent infringement. It was first tried to a jury and resulted in a verdict for the plaintiff in the amount of $153,553.18. Being of the opinion that his instructions to the jury were inadequate, the trial judge ordered a new trial. Thereafter the parties stipulated in writing that the case be tried to the court without a jury upon the testimony taken at the jury trial, and upon that record the case is now before the court for findings and judgment.

The patent in suit is United States patent No. 1,314,867 (filing date, February 1, 1918) to the plaintiff for a flexible power-transmitting mechanism, particularly intended for use as a cable release, a well-known device by which the shutter of a camera is actuated by pushing a plunger in the end of a cord or cable held in the operator's fingers. The reason for a flexible mechanism is that a thrust upon the shutter control either directly or through a rigid member is likely to jar the camera in the moment of exposure.

Formerly the desired result was accomplished by air compression by means of a bulb and a rubber tube. But it was found that rubber deteriorated rapidly, and the cable release, having a stem slid or pushed through an outer tubular member, was then evolved.

It was important, of course, that the device should be as nearly perfectly flexible as possible. A very slight degree of rigidity sometimes resulted in kinks or bends which prevented the free play of the inner sliding member and either disturbed the position of the camera or interfered with the perfect response of the shutter to the operator's control.

Now a solid coiled wire tube is capable of transmitting power from a lengthwise thrust and at the same time is in the highest degree flexible, and the idea of making the members of the cable of coiled wire tubes is disclosed in the earliest patents for cable releases. In fact, the earliest of all the patents cited, the German patent to Wermann, of 1902, shows both the inner thrust member and the sheath constructed in this fashion.

It is the plaintiff's claim, however, that he first invented the combination of a closed coil for the thrust member with an open coil for the sheath. By a closed coil is meant one in which the spirals are in contact throughout so that the whole is incompressible lengthwise. In an open coil the adjacent spirals are spaced. Both in his testimony at the trial and through his counsel and argument the plaintiff urged that this combination of closed inner and open outer coils is the essence of his patent and his real contribution to the art.

With the exception of one minor feature, which appears in claims 5 and 6 and which will be discussed later, it is practically conceded that all the instrumentalities of the plaintiff's device were known and used in the prior art. Taking the question in its broadest aspect and assuming, as the plaintiff contends, that all the claims (including 1 and 2) can be so construed as to include the combination which he says constitutes his real

invention, I am satisfied that it amounts to nothing more than an assembly of two selected elements, neither of them new, without any new joint function, and hence is unpatentable. Of course, they co-operate, and whoever first combined a flexible inner thrust member with a flexible outer sheath in a cable release may have produced a real invention, but when that had been done, and especially after coiled wire tubes had been evolved for both members, the selection of superior forms of coils from the prior art produced no new result as the product of the combination. Whatever advance there may have been was simply an aggregate of several results, each the complete result of one of the combined elements. The principle is too well established to require citation of authority.

No doubt a closed coil is the most satisfactory type of inner thrust member to be found in the prior art. An open coil would not do because of its compressibility, and the only alternative was an ordinary wire or stranded wires. But the closed coil being incompressible could transmit power just as well, while its superior flexibility greatly reduced the danger of kinking. The closed coil thrust member is a feature of the Wermann German patent of 1902, and also of the patent to Dakin and Underwood (filing date October 15, 1917), and was also manufactured by the defendant in this case prior to the date of the plaintiff's application.

For the sheath member an open coil is undoubtedly better than a closed coil. When the cable is bent the convolutions of the spirals on the inner side of the bend are drawn together without separating the spirals on the outside of the bend. This is desirable, since the whole thing is inclosed in inextensible fabric and, otherwise, inconvenient stresses and dislocations might be produced. But this mode of operation is a function of the outer spiral coil of itself and is performed entirely without regard to adjacent members of the combination. An open coil sheath member is shown in the Edwards British patent, No. 13,157, of 1905. The specification of that patent expressly recognizes that it was an old feature of such devices and had been used before in combination with an incompressible inner member.

It may be conceded that the plaintiff selected the best types of the elements to be found in the prior art and put them together. However, his closed coil thrust member still transmitted power in exactly the same way in which it did in the Wermann German patent and the Dakin and Underwood patent, and the fact that it was inclosed in an open coil instead of a closed coil did not change its mode of operation. The open coil sheath member flexed in precisely the same manner as in the various British patents which disclose its use, and it would do so whether the thrust member were a coiled tube, a stranded wire, or a plain wire, I am unable to see how the advantages of the particular types selected by the plaintiff for each of these members are enhanced or in any way affected by the character of the other member, or to find anything new in the functional relationship between them.

I should say here, parenthetically, that I do not agree with the defendant that claims 1 and 2, if construed to call for a closed coil inner member, would be anticipated by the British patent to Edwards, No. 5,471 of 1906. I think that the disclosure of that patent as to the innermost member means what the plaintiff says it does, namely, that it may be formed of wires held together by a closely coiled spiral and that it does not call for a closely coiled spiral alone. This conclusion arises not only from the grammatical construction of the sentence, but from a consideration of the patent itself. The exemplifications shown in figures 5, 6, and 7 all provide for power transmission by a pull rather than a push. The cross-bar marked "j" in these figures is slideable on a barrel so that, with the operator's fingers about the cross-bar, the pressure of his thumb upon the button will pull the inner member outwardly instead of pushing it inwardly. A coiled spring could not possibly be used in this form of the device because it is extensible, but there is no suggestion in the specification that these forms require any different kind of inner member from the other forms in which the power is transmitted by a push.

The conclusion that the combination of closed coil inner member and open coil outer member is not patentable in view of the prior art renders claims 1 and 2 invalid even if they be interpreted as claiming that particular combination, as the plaintiff contends. It may be well, however, to say that in my opinion they may not be so interpreted. These claims do not call for a coiled tube as an inner member, but merely for "means intervening * * * for the transmission of endwise motion," and, if read as stated, made a combination which was clearly anticipated by the British patents. Only by reference to the specification can the claim be narrowed to a claim for a coiled tube inner member. The file wrapper history, however, shows that another claim (original claim 17) identical in

all respects with claim 1 (and substantially identical with claim 2) except for the fact that it called for a "coiled wire tube" instead of "means intervening" was disallowed by the Examiner, as so anticipated. The plaintiff then amended by including a "barrel" feature in both claims and claim 1 was allowed. Claim 17 was again rejected "as not patentably distinct from claims 1 and 4 allowed." In this action the plaintiff actually acquiesced.

The case is so nearly on all fours with U. S. Repair, etc., Co. v. Assyrian Asphalt Co., 183 U. S. 591, 22 S. Ct. 87, 46 L. Ed. 342, that the opinion in that case may be applied to this with a very little paraphrasing, thus: "Another objection to the proposed limitation of the claim by making it read * * * ('a coiled wire tube') * * * in lieu of the unqualified word * * * ('means') * * * is the fact that the * * * ('17th') * * * claim, which contained the additional words, was withdrawn by the patentee upon a ruling or declaration of the Patent Office that the 1st and * * * ('17th') * * * claims were the same in substance and could not both be permitted to remain in the case. * * * Having voluntarily abandoned the claim for * * * ('a coiled wire tube') * * * the patentee * * * may not now insist that a broad claim containing no suggestion of such invention shall nevertheless be subjected by construction to the same restriction."

The Examiners' additional statement in rejecting claim 17, "the use of the 'coiled wire tube' for the 'intervening means' defined in claim 1 is not patentable in view of the German patent of record," is not so hard to understand as the plaintiff appears to think. In allowing claim 1 the Examiner obviously felt that a barrel feature was the only thing which saved it. He had already said that "means intervening" was not patentable, and then he went on to say that further defining "means" as a "coiled wire tube" did not help the situation, because the coiled wire tube was no advance over the German patent. Therefore, he said, the combination as patentable, which meant including the barrel, was identical in the two claims. Of course, he was in error in thinking that the barrel was a new feature, because it is clearly disclosed in British No. 5,741 of 1906 to Edwards and Watson, but that patent probably had not been called to his attention.

Claim 3 is clearly not infringed and the plaintiff does not seriously contend that it is. In the defendant's device the inner thrust member does not surround either the stem or the slide member.

Claims 5 and 6 call for a closely coiled inner tube and could be dismissed as invalid for want of patentable novelty for the same reasons which apply to claims 1 and 2, except for the fact that they contain the additional requirement that one of the features of the combination—a small rigid stem which takes power from the thrust member and actually pushes the shutter—be "adjustably joined" to the thrust member (claim 5) or "threaded to" it (claim 6). This form of connection was described by the plaintiff himself as "a minor feature of the machine * * * only a side issue" and though claims 5 and 6 are expressed as combination claims they are obviously in reality nothing more than claims for this particular form of connection. The patent to Dakin and Underwood shows a method of joining the thrust member to the stem which is substantially the same as that of the alleged infringing device. The argument made by the plaintiff that the two prick points disclosed in the Dakin drawing deform the coils of the thrust member and prevent it from being screwed out is without support in the record, and the fact that Dakin uses the word "fixed" in describing his method of attachment does not necessarily mean that the stem is so fixed that it cannot be unscrewed. The connection of the infringing device is a single prick point and it is rather hard to see from an X-ray photograph to what extent it deforms the coils of the thrust member if at all, but, taking the substance of the matter, that type of connection is clearly disclosed by Dakin. If the claims are to be construed as covering it they would be invalid as anticipated, and as a matter of fact I think they are.

I have not dealt with the question of the anticipation of the plaintiff's device by the defendants themselves because, in view of the conclusions reached in this opinion, it is unnecessary for me to make any definite findings upon this point, and I refrain from so doing.

The statements of fact contained in this opinion may be taken as findings of fact. If separate findings of fact are desired the parties may submit requests in accordance herewith.

The conclusions are:

(1) The combination of closed coil inner thrust member and open coil outer sheath member is not patentable because its elements were known to the prior art and no

new mode of operation or functional relationship arises from putting them together.

(2) Claims 1 and 2 cannot be interpreted as calling for a closed coil inner thrust member in view of the file wrapper history of this patent.

(3) Claims 1 and 2 are anticipated.

(4) Claim 3 is not infringed.

(5) Claims 5 and 6 are invalid because United States patent No. 1,297,327 to Dakin and Underwood antedating the plaintiff's application discloses the method of attaching the thrust member to the stem claimed, and conclusion "1" applies to these claims.

Judgment may be entered for the defendant.