SNEED, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that taxpayer's debt for taxes became "legally due and owing" on the March 15 return date, not the date the return was filed. I also agree that interest due and owing because of a failure to pay taxes when due and owing should be treated as taxes for purposes of section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a). I disagree, however, with the conclusion that all interest on unpaid taxes becomes due and owing on the same day as did the taxes. Section 6601(e) of the Internal Revenue Code does not require that conclusion.

Had taxpayer filed a proper 1965 return, it would have shown taxable income of $158,052.15 on which it would have owed a tax. The United States would not have been obligated to return that tax prior to December 31, 1967. Thus, the United States was entitled to the tax from March 15, 1966 to December 31, 1967. It is to compensate the United States for the loss of the use of this money, which taxpayer should have paid, that justifies the interest the taxpayer did in fact pay on December 1, 1971.

The majority holds that this interest, in its entirety, was due and owing on March 15, 1966. This is not so. Interest is measured by the time money is used. The obligation to pay interest increases in amount the longer the period during which the money is used. That is, interest accrues

during the period the debtor uses the money. It follows that taxpayer's obligation to pay interest accrued each day during the March 15, 1966 to December 31, 1967 period.

This leads me to conclude that interest accruing between August 28, 1966, the date exactly three years preceding the filing of the involuntary petition in bankruptcy, and December 31, 1967, became legally due and owing "within three years preceding bankruptcy." Therefore, I would reverse and remand for entry of a judgment denying taxpayer's suit for refund in part.

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Artemio Arthur ANGELINI,
Defendant-Appellant.**

No. 78–2432.

United States Court of Appeals,
Ninth Circuit.

Nov. 9, 1979.

**1307**

Theresa A. Kristovich, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

Fred L. Wright, Torrance, Cal., for plaintiff-appellee.

Before BROWNING and CHOY, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

Appellant was convicted and sentenced under a single count indictment charging that from on or about January 17, 1977 until December 17, 1977, he did knowingly engage in the business of dealing with firearms without being licensed to do so in violation of 18 U.S.C. § 922(a)(1).

Appellant's brief, presumably responsive to the mandate of Rule 28 Fed.R.App.P. states the "issues presented for review" as follows: "I. Was defendant in this matter denied a fair trial by a combination of judicial error and prosecutorial misconduct? II. Is the evidence of two sales in an eleven and one-half month period of time insufficient to sustain a conviction as a matter of law?" Such generality in the statement of issues, or specification or as-signments of error, can hardly be commended as even a bare compliance with the purpose and intent of Rule 28. As might be foreseen, such absence of analysis and direction was carried forward to the body of the brief in a confusing and disorganized attack upon the conduct of the prosecution and certain rulings of the trial judge. With the assistance of the government's brief, the key claims of error have been ferreted out for consideration.

First it should be noted that the second of appellant's "Questions presented" (supra) has no support in the record whatsoever. True, the government produced evidence of only two specific sales by appellant to undercover ATF agents, one on December 4, 1977, and the other on December 17, 1977. The firearms which were the subject matter of these sales were in evidence. But there was much more evidence to support the conviction. Without attempting to relate it all, it is sufficient to state that the evidence proved that for more than a year appellant had regularly attended gun shows and displayed firearms for sale. In January 1977, an ATF agent interviewed appellant seeking information about the source of a certain pistol and appellant showed him numerous sales slips or invoices documenting sales of firearms. On that occasion appellant was warned that his activities required a license inasmuch as he was engaging in the business of dealing in firearms. About a month later the agent again warned appellant and supplied him with the form of application for a license. On December 17, 1977, at the Orange County Fair Grounds where appellant had firearms on display at the gun show, after the undercover agent had made the specific purchase above noted, other agents moved to appellant's display table and seized nineteen firearms with price tags attached which were received in evidence. In sum, the evidence was overwhelming. We proceed then to a discussion of the alleged errors argued under the pretext that appellant had been denied a fair trial.

* Hon. Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

Appellant's motion for discovery was heard the day before the trial. The Assistant U. S. Attorney stated that she had furnished defense counsel with the "investigative file" which, she asserted, contained the names of "all known government witnesses." She stated that the two sales and one purchase reflected in that file were the sole specific transactions she intended to introduce, but that evidence of Angelini's other activities, such as his presence at various gun shows, would also be presented.

■■■ Appellant charged a breach of what he considered to be the government's commitment when an ATF agent testified that he visited appellant in connection with an investigation of "a convicted felon who was supposedly purchasing firearms at gun shows." The agent also testified that appellant had shown him a number of sales receipts relating to firearms transactions. Appellant's attorney promptly moved to strike the reference to a convicted felon, the motion was granted, and the jury was twice thoroughly admonished to disregard it. In the absence of the jury counsel and the Court at length considered what, if any, restrictions government counsel had placed on the scope of the government evidence, and the motion to strike the reference to sales slips was not granted. There was no error in these rulings. The investigative reports furnished to appellant's counsel disclosed the evidence in question and there is no indication of prosecutorial purpose improperly to bring prejudicial information to the attention of the jury. The rule that the trial judge is the best interpreter of his own orders and pre-trial stipulations approved by him is applicable here. *Likens-Foster Monterey Corp. v. United States*, 308 F.2d 595, 599 (9th Cir. 1962); *Winston v. United States*, 342 F.2d 715, 722 (9th Cir. 1965); *United States v. Pomares*, 499 F.2d 1220, 1223 (2d Cir.), cert. denied, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974). Further, the assertions of prejudice are quite thin. In a similar prosecution reference to a "sniper's gun" was held permissible. United States v. Kowalski, 502 F.2d 203 (7th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975).

■■■ Also under the rubric of "denial of fair trial" appellant attacks the judge's denial of his motion to strike the testimony of ATF Agent McNab because two-thirds of the agent's rough, contemporaneous notes of his investigation had been lost when his office was moved.

Counsel moved to strike McNab's entire testimony under the interpretation given the Jencks Act, 18 U.S.C. § 3500, in *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976). Inasmuch as the notes were lost and not destroyed pursuant to official agency policy as in *Harris*, Judge Kelleher concluded that there was not "the kind of non-production of notes" to warrant automatically striking the government witness's testimony. Instead, Judge Kelleher stated, prejudice to the defendant must be shown. Noting the thoroughness with which defense counsel had impeached the witness with the omissions in his report, that McNab's testimony was largely corroborated by that of other witnesses, and that the missing notes did not appear to contain exculpatory Brady material, the motion was denied. No error was committed in failing to strike Agent McNab's testimony. Cf., *United States v. Marques*, 600 F.2d 742 (9th Cir. 1979).

■■■ The appellant next contends that he was unfairly surprised and denied his rights to effective cross-examination when the government called on rebuttal Fred Foglio, a witness whose identity was not divulged until the morning of the day he was to testify. Whether this issue was adequately preserved is open to serious question, since defense counsel neither objected nor requested a continuance. *United States v. Krohn*, 558 F.2d 390 (8th Cir.), cert. denied, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977); *United States v. Sluder*, 457 F.2d 703 (10th Cir. 1972). As a substantive matter, moreover, the claim is meritless. The government is not required to reveal its witnesses, except in capital cases. Fed.R.Crim.P. 16. When it is required to do so, or when it does so voluntarily, the disclosure need only extend to witnesses intended

to be called in its case-in-chief. See *Goldsby v. United States*, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895); *United States v. Windham*, 489 F.2d 1389 (5th Cir. 1974); *Turner v. United States*, 441 F.2d 736 (5th Cir. 1971). The defense theory was that Angelini was only a collector who occasionally sold off pieces that no longer fit into his evolving collection. Foglio's testimony that he sold Angelini in November the very gun that Angelini sold ATF agents in December properly went to rebuttal of that defense. Cf. *United States v. Marsh*, 451 F.2d 219 (9th Cir. 1971). Finally, the Supreme Court has rejected the proposition that a defendant's due process or Sixth Amendment rights are denied when a witness is called contrary to the government's previous representations, *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

■ At the conclusion of the government's case-in-chief, appellant moved for a judgment of acquittal. His point was that there was no proof of profit, asserted to be essential to proof of engaging in business. The same theory supported appellant's objections to the court's rejection of proposed instructions. There was no error. Although profit motive is a factor to be considered, actual profit need not be shown. *United States v. Van Buren*, 593 F.2d 125 (9th Cir. 1979); *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975).

The only protestation of error that has excited the interest of the Court is the assignment that the trial judge erred in denying appellant's motion *in limine* to exclude evidence that appellant had been warned by ATF Agents Curley and Newby to obtain a dealer's license. Defendant argued then and argues now that this is a general intent crime and the evidence of warnings, which could have relevance only to the factor of scienter, was inadmissible and prejudicial. Defendant relies on precedent such as: *United States v. Freed*, 401 U.S. 601, 607–10, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (possession of firearms in violation of National Firearms Act—knowledge

of violation of law not an element); *United States v. Huffman*, 518 F.2d 80 (4th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975) (defendant not entitled to instruction that criminal intent to violate the law is an essential element of a violation of the Federal Firearms Act); *United States v. Ruisi*, 460 F.2d 153 (2d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972) (scienter not required to convict for unlicensed dealing in firearms); *Sipes v. United States*, 321 F.2d 174 (8th Cir.), *cert. denied*, 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963). The government's brief calls our attention to *United States v. Powell*, 513 F.2d 1249 (8th Cir.), *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975) (advice of counsel no defense to unlicensed dealing in firearms); *United States v. Wood*, 446 F.2d 505 (9th Cir. 1971) (advice of counsel no defense to violation of Selective Service Act); *United States v. Locke*, 409 F.Supp. 600 (D.Idaho), *aff'd*, 542 F.2d 800 (9th Cir. 1976) (advice of counsel no defense to receiving and possessing firearms as an ex-felon). From these authorities and others of like ilk the argument seems plausible that evidence of criminal intent is irrelevant and inadmissible under Rule 402 Fed.R.Evid.: "Evidence which is not relevant is not admissible."

One who embarks upon an investigation of the criminal law concept of *mens rea* immediately finds himself lost in an impenetrable forest. Justice Jackson referred to "the variety, disparity and confusion" of judicial definitions of "the requisite but elusive mental element" in crime. *Morissette v. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952). Scholars of criminal law generally have echoed this sentiment. See, e. g., Model Penal Code § 2.02, Comment (Tent.Draft No. 4, 1955); Packer, *Mens Rea and The Supreme Court*, 1962 Sup.Ct.Rev. 107; Dubin, *Mens Rea Reconsidered: A Plea for a Due Process Concept of Criminal Responsibility*, 18 Stan.L.Rev. 322 (1966).

■ The standard instruction given at trial of a general intent crime states: "To

constitute the crime charged in the indictment there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act." 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 14.01, at 374 (3d ed. 1977). Thus a state of mind is involved in every crime and evidence which is relevant to proof of the intent to do the criminal act is always admissible.

For example, *Sipes v. United States,* supra, was a prosecution under the National Firearms Act for possession of a firearm with a barrel less than 16 inches long made in violation of the Act. The court said:

> "We had occasion recently, in *Holdridge v. United States,* 282 F.2d 302, 308–310 (8 Cir. 1960), to consider criminal intent as a necessary factor in federal crime. That discussion need not be repeated here. We note it has been said flatly that 'scienter is not involved' with respect to §§ 5851 and 5841. *United States v. Decker,* 292 F.2d 89, 90 (6 Cir. 1961), cert. denied 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36. To the same effect is *United States v. Wost,* 148 F.Supp. 202, 204 (N.D.Ohio, 1957). But we need not go so far. What is charged by the information against Sipes is possession of a firearm made in violation of § 5821. There can be no question that the defendant's possession of the weapon was a knowing one. *Hill v. United States,* 294 F.2d 562 (8 Cir. 1961). He said he found it and possessed it for several days. It was in his hands when the arresting officers took it from him. He knew it was a gun. His possession therefore was a knowing possession. This is all the scienter which the statute requires. It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part that it was made in violation of § 5821, *Hazelwood v. United States,* 208 F.Supp. 622 (N.D.Cal.1962); *United States v. Mares,* 208 F.Supp. 550 (D.Colo.1962). In any event, the inference that Sipes inserted the nail is proper

and creates a knowing 'making' on his part."

321 F.2d at 179.

Our Court in 1948, in *Research Laboratories, Inc. v. United States,* 167 F.2d 410 (9th Cir.), cert. denied, 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393 (1948), a libel for condemnation and forfeiture of a misbranded drug, held that although good faith and lawful intent were not involved and not a defense, it was not error for the trial court to receive in evidence fraudulent letters allegedly written by satisfied customers to promote sales. The government was not limited to what was on the labelling alone.

This case was cited with approval by the Supreme Court in *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) which was a criminal prosecution for violation of the Federal Food, Drug & Cosmetic Act. Again it was recognized that awareness of wrongdoing was not an element of the offense, yet evidence that the defendant a year earlier had been notified by letter warning him of the contamination found in one of the company warehouses was admissible.

■ Again, in *United States v. Herrell,* 588 F.2d 711 (9th Cir. 1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979), our Court, in upholding the conviction of defendant for possession of a firearm by a convicted felon, recently held that evidence of an earlier possession of the firearm by the defendant was admissible. The Court relied on Rule 404(b), Fed.R.Evid. and found the evidence relevant to the issues of knowledge and intent. Although the court did not allude to the fact that this was only a general intent crime, it is implicit that the state of mind to which the evidence was relevant was the intent to do the act, the intent to possess the firearm. Of course, conceptually, possession of personal property involves the power to control and the intent to control.

■ The instant case is not dissimilar. Here defendant was charged with engaging in business. While this involves a series of acts, rather than a single act, the intent to do the "act", that is to engage in business,

was an essential part of the government's proof. Evidence of warnings by government agents, followed by continued activity of the same character, is certainly relevant.

The evidence is also relevant to rebut a negative inference which the jurors might otherwise draw.[1] The ATF agents visited appellant while investigating another case. They learned of the scope of his firearms activities from the production of sales slips. If no warning had been given, the jurors might have concluded that the agents had no reason to believe that he was engaging in business as a dealer in firearms. In the words of the author of the cited law review article: "Trial judges, when deciding whether to exclude evidence, should recognize that part of proving a case may involve meeting a jury's expectations about proof—that is, satisfying the expectations of triers of fact who logically reason that a party whose position is sound should have evidence on particular points." This concept influenced our Court in the *Research Laboratories case* when it said: "It was not error for the court below to permit the appellee to lay before the jury the entire picture", 167 F.2d at 421, and, also, the Supreme Court in *United States v. Park*, when it said: "And, particularly in light of the difficult task of juries in prosecutions under the Act, we conclude that its relevance and persuasiveness outweighed any prejudicial effect", 421 U.S. at 678, 95 S.Ct. at 1914.

The judgment is affirmed.

---

1. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated* *With the Absence of Evidence*, 66 Calif.L.Rev. 1011 (1978).