UNITED STATES, Appellant
and Cross–Appellee

v.

John D. MARRIE, Staff Sergeant
U.S. Air Force, Appellee and
Cross–Appellant.

No. 94–5007.
CMR No. 29953.

U.S. Court of Appeals for
the Armed Forces.

Argued May 15, 1995.

Decided Sept. 26, 1995.

For the Accused: *William J. Holmes* (argued); *David M. Lewis, Jr.* and *Captain Todi S. Carnes* (on briefs); *Colonel Jay L. Cohen.*

For the United States: *Major John H. Kongable* (argued); *Colonel Thomas E. Schlegel* and *Colonel Jeffery T. Infelise* (on briefs).

## Opinion of the Court

CRAWFORD, Judge:

1. Contrary to his pleas, the accused was convicted by a general court-martial panel of officers and enlisted members of sodomy (3 specifications), committing indecent acts (2 specifications), and taking indecent liberties (4 specifications)—all with a child under age 16, and false swearing, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review * modified some specifications but still affirmed the sentence in the case. 39 MJ 993, 1004–05 (1994).

2. We will review the following issues:

### Certified Issue

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT HELD THE DETERMINATION OF THE AVAILABILITY OF A WITNESS UNDER RCM 405(G)(1)(A) [¶ 3] COULD NOT BE BASED SOLELY ON THE FACT THAT THE WITNESS IS LOCATED MORE THAN 100 MILES FROM THE SITUS OF THE ARTICLE 32 INVESTIGATION [¶ 4].

### Granted Issues

#### I .

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE

* *See* 41 MJ 213, 229 n. * (1994).

MOTION TO REOPEN THE ARTICLE 32 INVESTIGATION TO TAKE THE TESTIMONY OF THE ALLEGED VICTIMS WHO WERE THE SOLE BASIS FOR THE ALLEGATIONS AGAINST [THE ACCUSED] WHERE THE INVESTIGATING OFFICER HAD APPLIED THE WRONG LEGAL STANDARD IN CONCLUDING THAT THEY WERE UNAVAILABLE.

#### II

WHETHER [THE ACCUSED] WAS SUBSTANTIALLY PREJUDICED BY THE TESTIMONY OF THE GOVERNMENT EXPERT WITNESS WHICH IMPERMISSIBLY BOLSTERED THE CREDIBILITY OF THE GOVERNMENT WITNESSES ACCUSING [THE ACCUSED] BY CONCLUDING THAT THEY WERE TRUTHFUL AND GAVE THEIR ALLEGATIONS A "STAMP OF SCIENTIFIC LEGITIMACY."

3. We agree with the court below that RCM 405(g)(1)(A), Manual for Courts–Martial, United States, 1984 (Change 5), does not set forth a *per se* rule, 39 MJ at 997, and that the judge's application of the wrong standard was harmless, *id.* at 998. We also hold that admission of the expert witness' testimony, when considered as a whole, was harmless error, *id.* at 999.

### Certified Issue and Granted Issue I

#### FACTS

4. The accused was charged with committing indecent acts upon and taking indecent liberties with 5 young boys at different times over a 2–year time frame. He was also charged with committing sodomy with 3 of these boys and soliciting one of them. Between the dates of the alleged crimes and the Article 32, UCMJ, 10 USC § 832, investigation, the families of 3 of the boys moved from Lackland Air Force Base, Texas, to reside more than 100 miles from the situs of the Article 32 investigation.

5. None of the victims personally appeared at the Article 32. The Article 32 investigating officer determined that the 3

victims who resided more than 100 miles away were unavailable under RCM 405(g)(1)(A). It is not clear whether these boys were provided invitational travel orders. However, travel orders were issued for the 2 other boys who resided within a 100–mile radius, but their parents refused to allow them to testify. Final Brief on Certified Issue at 2–3. No attempt was made for them to testify by video or telephone. The investigating officer then considered the sworn written statements of these boys and made his recommendation. *See* RCM 405(g)(4)(B)(i). The defense objected to use of these statements at the Article 32 investigation and renewed their objection at trial. *See* 39 MJ at 996.

6. There the judge relied only upon distance in determining the unavailability of the witnesses. Even so, "the judge instructed the prosecutor to ensure the defense had access to the witnesses" for the purpose of interviewing them prior to trial. When trial reconvened 36 days later, "defense counsel assured the military judge that he had interviewed all the children with his expert consultant present as an observer." 39 MJ at 998.

## DISCUSSION

7. There is a hierarchy of sources of rights in the military. *See, e.g., United States v. Taylor,* 41 MJ 168, 169–70 (CMA 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1073 (1995). There we stated:

> The military, like the Federal and state systems, has hierarchical sources of rights. These sources are the Constitution of the United States; Federal Statutes, including the Uniform Code of Military Justice; Executive Orders containing the Military Rules of Evidence; Department of Defense Directives; service directives; and Federal common law. Unlike the Federal Rules of Evidence, Section III of the Military Rules of Evidence "codifies" the constitutional rules. Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source

creates rules that are constitutional and provide greater rights for the individual; for example, Mil.R.Evid. 305(e) as to notice to counsel, or Article 31, UCMJ, 10 USC § 831, requiring warnings to suspects not in custody.

[Quoting *United States v. Lopez,* 35 MJ 35, 39 (CMA 1992)]

> The paramount source is the U.S. Constitution....

> The next applicable source is the Uniform Code of Military Justice, Articles 1–146, 10 USC §§ 801–946....

8. Article 32 provides:

> (a) No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made....

> (b) The accused shall be advised of the charges against him and of his right to be represented at that investigation by counsel. The accused has the right to be represented at that investigation as provided in section 838 of this title (article 38) and in regulations prescribed under that section. At that investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are *available* and to present anything he may desire in his own behalf, either in defense or mitigation, and the investigating officer shall examine *available* witnesses requested by the accused. If the charges are forwarded after the investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides and a copy thereof shall be given to the accused.

(Emphasis added.)

9. Article 32 does not define "available." However, the following discussion concerning the word "available" occurred in the hearings on the Uniform Code of Military Justice (Act of 1950):

> Mr. Anderson. It says that—

>> at such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available.

> Mr. Larkin. Oh. I beg your pardon.

Mr. Anderson. Now, to what extent do the services go to insure the fact that the witnesses will be available?

Mr. Larkin. We have provided in another section which we will come to soon that there shall be equal opportunity to obtain witnesses by all parties. Heretofore the statute provided that the witnesses were to be obtained by the judge advocate and the defense requested their witnesses through him.

It is our contemplation that the trial counsel will be the specific administrative agent who will still obtain witnesses. But by providing that there is equal opportunity to obtain them, in the event that the defense feels his request has been unjustly overruled, then we contemplate that that request of the defense would be forwarded to the convening authority and he would have the discretion of obtaining the witnesses for the defense. But the principle enunciated is that there shall be equal opportunity.

\* \* \*

Mr. Anderson. What I had in mind was the possibility that a witness that was called by the accused to be cross-examined might have prior to the investigation been transferred to another unit or another theater of operations. What effort will be made to make him available and what does available cover? How far away does he have to be or where he is to be available?

Mr. Smart. It is subsequently prescribed in article 49(d)(1) that more than 100 miles may be construed as reasonable distance. It might very well be that circumstances would be such that it would be more than that, but I think that the general rule would be, Mr. Anderson, that if they would say that the prosecution may bring witnesses for a distance extending 100 miles, then that right would likewise apply to the accused.

Mr. Anderson. It would be equal.

Mr. Smart. And if they limited the prosecution to that distance then that would limit the accused. And then his right to take depositions would intervene.

Mr. Norblad. I think the one important factor to keep in mind on this is that this is not the trial. It is merely the preliminary investigation to satisfy the officer investigating that there is probable cause that the man did commit the crime and there is enough evidence to warrant that he should be put on trial.

They are not trying to decide whether he is guilty or innocent. So I don't think it is so important here as it is in the trial of the case to have the witnesses available.

Mr. Larkin. What I said as applying here refers to the trial. I probably gave the wrong impression.

Mr. Norblad. Just like a hearing before a justice of the peace, to determine whether a man is being lawfully held or if there is enough evidence to try him.

Mr. Smart. A *prima facie* case.

Mr. Norblad. Yes.

Mr. Larkin. This I should say goes further than you usually find in a proceeding in a civil court in that not only does it enable the investigating officer to determine whether there is probable cause, as you point out Mr. Norblad, but it is partially in nature of a discovery for the accused in that he is able to find out a good deal of the facts and circumstances which are alleged to have been committed which by and large is more than an accused in a civil case is entitled to.

\* \* \*

Mr. Anderson. Mr. Larkin, let us take this hypothetical case: A man commits a crime in Germany. His unit is transferred out the following day. He is shipped to the United States. He may wind up at Fort Sill. The charge against him doesn't catch up with him until he is here. The witnesses are all still in Germany. Are they available or are they not available?

Mr. Larkin. You are talking about both witnesses, I take it: Prosecution witnesses and defense witnesses?

Mr. Anderson. Right.

Mr. Larkin. Well, they are available as soon as they can get them all here, I suppose.

Mr. Anderson. What would they do—subpoena them or would they send each back here?

Mr. Larkin. Well, it would depend on who the witnesses are. If they are subject to military control, why they can transfer them. If the are local nationals, why I don't believe they can.

Mr. Elston. You do provide for the taking of depositions.

Mr. Larkin. We do.

Mr. Gavin. They have brought them back. I was interested in a case where they brought a witness right back from Italy. He was located in Italy at that time. I think it was during the war. The witness was returned to the States.

Mr. Larkin. I think whether they move either witnesses or the accused depends upon the circumstances.

Mr. Norblad. I think the whole difficulty, Mr. Anderson, is through your entire court-martial system. There is nothing you can do to correct it. As for instance during the war at the time the boat would sail somebody would be a.w.o.l. Well, he committed the crime at Camp Kilmer or Camp Dix.

All the witnesses had been shipped to Europe, including the first sergeant who had the morning report and the man who had the bed next to him. It made it almost impossible to try the man because jurisdiction was here and the witnesses were in Europe. There was charge after charge dismissed. I know of a case in our own unit. I don't know how you can correct the thing.

Mr. Larkin. That is right.

Mr. Brooks. You won't contemplate, Mr. Larkin, would you, that in a preliminary examination such as this bringing the witnesses back to this country from Germany?

Mr. Larkin. Well, you would have to if they are material witnesses because this preliminary investigation must be held before you can refer the case to a general court-martial.

Mr. Brooks. But you merely have to establish prima facie cases, is that all?

Mr. Larkin. That is right.

Mr. Brooks. And if you can do it without bringing material witnesses back from Germany they won't be available in the sense that you refer to in this article.

Mr. Larkin. That is right.

Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 996–98 (1949).

10. Because the Code does not define "available," the President, pursuant to Article 36(a), UCMJ, 10 USC § 836(a), has promulgated various procedural rules as to "availability" in the Manual for Courts–Martial.

11. RCM 405(g)(1)(A) provides the procedure governing the production and cross-examination of witnesses by an accused at an Article 32 investigation. Prior to July 6, 1991, it read:

> Except as provided in subsection (g)(4)(A) of this rule, any witness whose testimony would be relevant to the investigation and not cumulative, shall be produced if reasonably available. This includes witnesses requested by the accused, if the request is timely. A witness is "reasonably available" when the significance of the testimony and personal appearance of the witness outweighs the difficulty, expense, delay, and effect on military operations of obtaining the witness' appearance. A witness who is unavailable under Mil.R.Evid. 804(a)(1) thorugh [sic] (6), is not "reasonably available."

This rule was very similar to the balancing test set out by this Court for the determination of the availability of witnesses at Article 32 investigations. *See, e.g., United States v. Ledbetter,* 2 MJ 37, 43–44 (CMA 1976); *see also United States v. Chestnut,* 2 MJ 84 (CMA 1976). This Court explicitly noted that the balancing test was necessary because it found no definition of "available" in Article 32.

12. The definition of "available" was clarified by Change 5 to the Manual for Courts–Martial, which became effective on ·July 6, 1991. As part of Change 5, RCM 405(g)(1)(A) was altered to read as follows:

Except as provided in subsection (g)(4)(A) of this rule, any witness whose testimony would be relevant to the investigation and not cumulative shall be produced if reasonably available. This includes witnesses requested by the accused, if the request is timely. A witness is "reasonably available" when *the witness is located within 100 miles of the situs of the investigation and* the significance of the testimony and personal appearance of the witness outweighs the difficulty, expense, delay, and effect on military operations of obtaining the witness' appearance. A witness who is unavailable under Mil.R.Evid. 804(a)(1)—(6) is not "reasonably available."

Exec. Order No. 12,767, § 1a, 56 Fed.Reg. 30284 (1991). (Added language emphasized.) This Change applies here because the Article 32 investigation was conducted on October 2, 1991.

13. Change 5 added a second criterion for a determination that a witness was "reasonably available." This is evident by the use of the conjunctive "and" to indicate the relationship between these two criteria. An Investigating Officer must find that a witness meets both criteria in order to find a witness "located within 100 miles" to be "reasonably available." The Analysis to Change 5 provides:

*1991 Amendment:* Subsection (g)(1)(A) was amended by adding a requirement that a witness be located within 100 miles of the situs of the investigation to be "reasonably available." Given the alternatives to testimony available under subsection (g)(4), a *bright-line rule of 100 statute miles* simplifies the "reasonably available" determination and improves the efficiency of the investigation without diminishing the quality or fairness of the investigation. If a witness is located within 100 statute miles of the situs of the investigation, the investigating officer must consider the other factors in subsection (g)(1)(a) in determining availability. The remaining provisions of section (g) remain applicable. [The production of witnesses located *more than 100 statute miles* from the situs of the investigation is *within the discretion of* the witness' commander (for military wit-

nesses) or *the commander ordering the investigation (for civilian witnesses* ).]

Manual, *supra* at A21–24 (1994 ed.) (emphasis and brackets added).

14. The Court of Military Review required a balancing test if the witness is beyond 100 miles. That court relied on the sentence in brackets quoted above to support its rationale that a balancing test was required. 39 MJ at 997. In effect, the court below stated that RCM 405(g)(1)(A) defines witnesses who are available and leaves it to the discretion of the commander for witnesses located more than 100 miles from the site of the investigation.

## CONCLUSION

15. We agree with the court below and hold that to interpret Change 5 as a *per se* rule making witnesses beyond 100 miles from the site of the investigation unavailable would be inconsistent with RCM 405(g)(1)(A).

16. If these issues were approached from a Sixth Amendment confrontational perspective, we note that the accused would not have a constitutional right to confront a witness at a civilian preliminary hearing. *Goldsby v. United States,* 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895). The Sixth Amendment does not expand a defendant's rights at the preliminary hearing or the grand jury. Furthermore, at the grand jury hearing, inadmissible evidence may be considered in whole or in part. *See, e.g., Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). We do not approach this as a constitutional question, however, but as a Manual question. The Manual is much broader than the Sixth Amendment right at preliminary hearings and grand juries.

17. The error by the Article 32 investigating officer and the judge in applying the 100–mile rule to determine availability was harmless. Art. 59(a), UCMJ, 10 USC § 859(a). Defense counsel was given more than an adequate opportunity to interview the witnesses in preparation for trial. In fact, defense counsel assured the judge that he had adequate access and opportunity to

interview these witnesses prior to trial. ¶ 6. Thus we hold any error was harmless.

### Granted Issue II

### FACTS

18. Dr. Nancy Slicner, a licensed psychologist for 16 years, interviewed the victims. She testified about typical patterns of disclosure by victims of sexual child abuse; the potential for false allegations; the possibility of influence on victims by outside coaching; and falsities that may occur when there are custody disputes. *See* Answer to Final Brief on Granted Issues at 7. Trial counsel then asked whether some victims are reluctant to come forward, and the following colloquy took place:

Q: Dr. Slicner, of all victims of child sexual abuse, when a child is sexually abused, through your own experience, through accepted studies in this field, which group is less likely to report it?

A: Preteen and teenage boys.

Q: And do we know why other than they're least likely to report it, do we know reasons why?

A: Yes, because of the shame and embarrassment. Those are significant factors in preteen boys. It must be always included in the evaluation. They're very, very afraid because, you know, their sexual identity is being formed at this point. So especially if it is an adult male with a preteen boy, and the fear of being labeled homosexual and if their friends would ever find out, and that is some very scary stuff for a preteen boy, so hence, they are the least likely to ever come forward.

Q: And again, ma'am, based on your own experience, based on whatever accepted studies have been done, how frequently do these preteen boys make false allegations of homosexual activity?

Civilian defense counsel objected, claiming that "quantification of these false allegations" was "beyond the scope of" the trial. The military judge found the question to be "relevant" and allowed it. Trial counsel continued:

Q: I'll ask the question again, Through your own experience, ma'am, through accepted studies in this area, how frequently do preteen boys make false allegations of homosexual sexual abuse?

A: I can't give you a percentage certainly, and I wouldn't want to do that. I can say, based on my own clinical experience, I have never seen it, but based on, you know, what I've read, it is extremely rare.

### DISCUSSION

19. This Court in the past has allowed experts to testify as to behavioral characteristics of victims, including delays in reporting, *United States v. Houser*, 36 MJ 392 (CMA), *cert. denied*, —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *United States v. Nelson*, 25 MJ 110 (CMA 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988); distortions, *United States v. Houser, supra*; returning to live with the suspect, *United States v. Johnson*, 35 MJ 17 (CMA 1992); and recanting, *United States v. Pollard*, 38 MJ 41, 50–51 (CMA 1993). On the other hand, this Court has repeatedly held that an expert cannot testify as to the credibility of a victim. *See, e.g., United States v. Harrison*, 31 MJ 330, 332 (CMA 1990); *United States v. Petersen*, 24 MJ 283 (CMA 1987).

20. Counsel should be diligent to explain seemingly inconsistent conduct where behavioral characteristics are admitted. The purpose for admitting these characteristics can be explained in *voir dire*, opening statements, cross-examination, closing statements, and instructions. *United States v. Suarez*, 35 MJ 374 (CMA 1992); *see also United States v. Johnson*, 35 MJ at 21.

21. While Dr. Slicner did not expressly testify that she believed the victims, she did state that "it is extremely rare" that preteen boys would falsely report such a crime. The inference is very clear, and it is prohibited by our cases which have clearly

held testimony regarding credibility to be inadmissible.

22. We therefore conclude that Dr. Slicner's testimony is an impermissible comment on credibility. However, when we consider her entire testimony in context with the other evidence in the record, we hold that the error in this case is harmless beyond a reasonable doubt.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and GIERKE concur.

WISS, Judge (concurring in the result):

23. I agree with the majority's reading of the 1991 version of RCM 405(g)(1)(A), Manual for Courts–Martial, United States, 1984. I do so, however, because that reading is necessary in order to be legally consistent with this Court's interpretation of the meaning of "available" in Article 32, Uniform Code of Military Justice, 10 USC § 832. *See United States v. Ledbetter*, 2 MJ 37 (CMA 1976); *accord United States v. Chestnut*, 2 MJ 84 (CMA 1976). Thus, while the majority states that it approaches this "as a Manual question," ¶ 16, I approach it as a statutory question—specifically, how to read RCM 405(g)(1)(A) in a manner consistent with Article 32 and the controlling statutory interpretation of "available" by this Court.

SULLIVAN, Chief Judge (concurring in the result):

24. I join Judge Wiss' separate opinion in this case but note two further exceptions to the majority opinion. First, Change 5 to RCM 405(g)(1)(A), Manual for Courts–Martial, United States, 1984, does not itself provide that "[t]he production of witnesses located more than 100 statute miles from the situs of the investigation is within the discretion of the witness' commander (for military witnesses) or the commander ordering the investigation (for civilian witnesses)." *Compare* Manual, supra at II–36 *with* A21–24 (1994 ed.) This interpretation of Change 5 is articulated only in the analysis of the drafters of that change. In addition, the Court of Military Review did not hold that this statement was a proper interpretation of Change 5 to RCM 405(g)(1)(A). The court below simply held that Change 5 did not establish the 100–mile distance alone as the determining factor of a witness' availability and the same balancing test applied for witnesses regardless of their distance from the situs of the investigation.

25. In a fair system, when a witness will bring truth to the proceeding, justice, not distance, should be the main criterion for a decision on availability. The basic rights to witnesses in a proceeding under the Uniform Code of Military Justice are grounded in statutory law, *e.g.*, Articles 32 and 46, UCMJ, 10 USC §§ 832 and 846, respectively, not the Manual for Courts–Martial.