UNITED STATES of America

v.

Jose R. CABRERA–FRATTINI,
Lance Corporal (E–3), U.S.
Marine Corps.

NMCCA 200201665.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 25 Jan. 2002.

28 Feb. 2008.

For Appellant: LT Jennie Goldsmith, JAGC, USN; Capt Babu Kaza, USMC.

For Appellee: Maj Brian Keller, USMC.

Before FELTHAM, Senior Judge, MITCHELL, and O'TOOLE, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

O'TOOLE, Judge:

Officer and enlisted members, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of carnal knowledge and of committing an indecent act with a minor, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. The members sentenced the appellant to confinement for three years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

After carefully considering the entire record of trial, the appellant's seven assignments of error,[1] the briefs and supplemental briefs of the appellant and of the Government, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), 10 U.S.C. §§ 859(a) and 866(c).

### Procedural History of the Case

A predecessor panel of this court set aside the findings and sentence, holding that the trial judge erred in allowing a pre-trial depo-

---

1. The appellant's assigned errors are contained in Appellant's Brief of 7 March 2005 and Appellant's Supplemental Brief of 31 August 2007:

I. The military judge erred to the substantial prejudice of appellant when he failed to dismiss the senior member after learning that [TO's] stepfather was one of his drill instructors.

II. Appellant was denied his right to confrontation under the Sixth Amendment by the military judge's finding that the primary witness against him was unavailable and admitting her deposition during trial.

III. The trial counsel improperly argued during presentencing that the members should place themselves in the position of the alleged victim.

IV. The trial counsel committed prosecutorial misconduct in that he commented on Appellant's decision not to testify by using the word "unrebutted" thirteen times.

V. Appellant's charges constitute an unreasonable multiplication of charges since they both describe the same act.

VI. Based on the cumulative effect of assignment of error I–IV, Appellant was denied a fair trial.

VII. Appellant was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 55, UCMJ.

sition to be introduced into evidence in lieu of the personal appearance of the putative minor victim, "TO," thereby violating the appellant's Sixth Amendment Right to Confrontation. *United States v. Cabrera–Frattini*, No. 200201665, 2006 WL 4572869, 2006 CCA Lexis 218 (N.M.Ct.Crim.App. 2 Aug 2006)(*Cabrera–Frattini I*). This court's decision was overturned by our superior court, which held that "[u]nder the particular facts of this case, we hold that the military judge did not abuse his discretion by concluding that the Government made good faith efforts to procure the witness's presence for trial, concluding that TO was unavailable, and admitting TO's videotaped deposition testimony." *United States v. Cabrera–Frattini*, 65 M.J. 241, 248 (C.A.A.F.2007)(*Cabrera–Frattini II*).[2]

We also note that, during the pendency of the appeal in this case, the Supreme Court decided the case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* held that, in order to admit testimonial hearsay, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. On the basis of that decision, the appellant now seeks review asserting, *inter alia,* that the deposition process in this case did not provide him a constitutionally adequate prior opportunity for cross-examination. The previous decision of this court concluded otherwise.[3] However, that summary conclusion was not the product of a substantive consideration of the narrow issue now presented. Furthermore, even though "[t]his portion of the decision was not appealed" (*Cabrera–Frattini II*, 65 M.J. at 243, n. 2.), in view of the shifting of case law from 2001 to the present, we do not consider the narrow issue as having been waived. *Id.* at 245 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987))(holding that "a new rule for the conduct of criminal prosecutions

is to be applied retroactively to all cases . . . pending on review.").

We have, therefore, reviewed anew this assigned error and affirm our prior holding. The deposition was properly ordered and conducted, and the appellant had a full and fair opportunity to cross-examine TO.

## Depositions and the Confrontation Clause

### Background

The charges against the appellant arose from his alleged sexual involvement with a teenage minor, TO. TO did not testify at the Article 32, UCMJ, investigative hearing. Following referral of charges, the defense requested that the convening authority order a deposition of TO. The convening authority denied the request. At trial, the defense raised a motion for a new Article 32, UCMJ, investigation. The military judge found that the investigation had been conducted in substantial compliance with RULE FOR COURTS-MARTIAL 405, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), but he ordered an oral deposition of TO, so that the defense would have the opportunity to cross-examine the key Government witness prior to trial. That deposition was conducted and videotaped on 13 November 2001. Present were the appellant's individual military counsel (IMC), assistant defense counsel, the accused, and trial counsel. After direct examination of TO by the trial counsel, the IMC conducted cross-examination. About a month later, TO was hospitalized and remained unavailable to testify at trial. A portion of the videotape was then admitted in lieu of her direct testimony, giving rise to the first assigned error. The IMC objected to playing the portion of the videotape containing his cross-examination of TO and that portion was not played.

### Analysis: Purpose of Depositions in Criminal Cases

In military practice, the primary purpose of a deposition under R.C.M. 702(a)

---

2. Our predecessor panel, having granted relief on the second assigned error, did not have occasion to review the other assigned errors. We will do so.

3. "There is no dispute that the deposition was properly ordered and conducted, and the appel-

lant had ample and full opportunity to cross-examine TO, with a view toward the deposition's possible later use at trial." *Cabrera–Frattini I,* No. 200201665, 2006 WL 4572869, at *5, 2006 CCA Lexis 218, at 13.

is to preserve testimony for future use at trial. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), App. 21, at A21–34 (citing *Hearings on H.R. 2498 Before a Subcomm. of the Comm. on Armed Services* 81st Cong. 1st Sess. 1064–1070 (1949)). The Analysis of R.C.M. 702(a) notes that federal courts have consistently construed the rule's counterpart, FEDERAL RULE OF CRIMINAL PROCEDURE 15(A), as a device used to preserve future testimony and not as a discovery vehicle. *United States v. Varbaro,* 597 F.Supp. 1173, 1181 (S.D.N.Y.1984); *see United States v. Adcock,* 558 F.2d 397, 406 (8th Cir.1977)(citing 8 J. Moore's Federal Practice P 15.01[3] at 15–8 (1976)). Military practice provides for somewhat more flexible use of depositions in circumstances unique to the military, such as securing the sworn testimony of a witness prior to trial who was improperly found to be unavailable at an Article 32, UCMJ, investigation. *United States v. Chestnut,* 2 M.J. 84 (C.M.A.1976). Additionally, as in this case, a deposition may be ordered to allow the defense an opportunity to cross-examine an essential witness who was not available at the Article 32, UCMJ, investigation. *United States v. Chuculate,* 5 M.J. 143 (C.M.A.1978). But, even under such circumstances, litigants are on notice that a deposition could be admitted at trial in the event the witness is determined to be unavailable. R.C.M. 702(a), Discussion. Despite this, the appellant here declined other available options, such as a telephone interview of TO, and specifically requested an oral deposition. On the basis of the clear state of the law regarding depositions in criminal cases, we reject any implication or assertion that the appellant was somehow misled by the circumstances, or by the order of the military judge, such that he did not understand the deposition of TO could be admitted at trial, if she were to become unavailable.

*Analysis: "Effectiveness" of Cross-Examination*

The Supreme Court has declined to assess the effectiveness of questioning when an appellant has been given an opportunity for cross-examination. *Ohio v. Roberts,* 448 U.S. 56, 73, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), overruled by *Crawford,* 541 U.S. at 36, 124 S.Ct. 1354. The court held that "in all but extraordinary cases, no inquiry into 'effectiveness' is required. A holding that every case involving prior testimony requires such an inquiry would frustrate the principal objective of generally validating the prior-testimony exception in the first place—increasing certainty and consistency in the application of the Confrontation Clause." *Id.* at n. 12.[4] More to the point, " '[t]he Confrontation Clause guarantees ... [t]he *opportunity* for effective cross-examination, however [it] does not extend to cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *United States v. Longstreath,* 45 M.J. 366, 373–74 (C.A.A.F.1996)(quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985))(emphasis in original). The portions of the *Roberts* and *Fensterer* opinions, withholding inquiry into the effectiveness of prior cross-examination, were not disturbed by the subsequent holding in *Crawford,*[5] and we decline to abandon them. To do otherwise would result in there being no firm rule for courts and counsel to rely upon when evaluating the admissibility of prior testimony.

In this case, the appellant had access to TO's prior written statement, as well as the benefit of interviewing the other witnesses and participating in an Article 32, UCMJ, investigation. The decision to decline a telephone interview of TO and request an oral deposition was an informed, tactical choice. During the deposition, the charges against the appellant were the same as those

---

4. The Supreme Court cited *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), as an example of an extraordinary case. In that case, the court considered the adequacy of counsel's cross-examination in a prior hearing only after finding that the appellant's counsel was otherwise ineffective. *Id.* at 209, 92 S.Ct. 2308.

5. "Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford,* 541 U.S. at 59, 124 S.Ct. 1354.

954

for which he was later tried, so the appellant had the same interest in cross-examination during the deposition as he had at trial. He was present with both of his defense counsel, the trial counsel, and the putative victim. The choice of questions posed during the deposition cross-examination involved a series of tactical decisions, made with notice that the deposition could be introduced into evidence if TO were found to be unavailable for trial.

We find that these circumstances presented an adequate opportunity to effectively cross-examine TO at the deposition and the appellant's IMC availed himself of that opportunity. In view of these facts, we find the videotape of TO's testimony bore sufficient "indicia of reliability" and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement. *United States v. Hines*, 23 M.J. 125, 129–30 (C.M.A.1986); *United States v. Vietor*, 10 M.J. 69, 73 (C.M.A.1980)(Everett, C.J., concurring in the result). We hold, therefore, that the appellant was afforded a full and fair opportunity for effective cross-examination of TO and that admitting TO's deposition into evidence at trial did not violate the appellant's Sixth Amendment Right to Confrontation.[6]

## Prosecutorial Misconduct

In his third and fourth assignments of error, the appellant argues that the trial counsel impermissibly commented on the appellant's failure to testify and later improperly asked the members to put themselves in the victim's position. The IMC, however, did not object at trial to either of these arguments. We, therefore, review for plain error. R.C.M. 919(c); *see United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F.2007)(citing *United States v. Barrazamartinez*, 58 M.J. 173, 175 (C.A.A.F.2003) and *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F.2001)). To prevail under a plain error analysis, the appellant "must demonstrate that: '(1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Id.* (quoting *United States v. Kho*, 54 M.J. 63, 65

(C.A.A.F.2000))(citing *United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F.1999)). In applying this "black letter" law, we are mindful that a prosecutorial comment must be examined in light of its context within the entire court-martial. *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F.2005).

■ Regarding trial counsel's argument on findings, it is well-established that a trial counsel may not comment upon the fact that an accused did not testify in his own defense, either "directly, indirectly, or by innuendo[.]" *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A.1990)(citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). "Furthermore, he is not permitted to comment on an accused's failure to produce witnesses in his behalf." *Id.* (citing *United States v. Swoape*, 21 M.J. 414 (C.M.A. 1986)). "If such comments are made, the record must then be examined for prejudice to determine whether the error was harmless." *Id.* (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

■ Looking at the trial counsel's argument in the context of this case as a whole, it appears he was not commenting on the silence of the accused, or on his defense, but on the strength of the Government's case, each witness having testified in general conformity with the others. Nevertheless, the military judge perceived the potential for this argument to be improperly interpreted. To prevent any unintended inference, the trial judge *sua sponte* interrupted the trial counsel. He then took the unusual step of questioning the trial counsel in the presence of the members. He secured the trial counsel's assurance that his comments about the Government's witnesses being "unrebutted" were not comments on the accused's right to remain silent. The military judge then instructed the members that the appellant was under no obligation to testify. He thereafter included in his instructions on findings that the appellant is presumed to be innocent, that the burden of proof never shifts to him, and that he has a right to remain silent. Apparently, the IMC was satisfied with the

---

6. The ruling in *Cabrera–Frattini II* determined that TO was correctly found to have been unavailable to testify at trial.

military judge's actions and saw no need for any additional corrective instructions. We, too, are confident that the prompt action of the military judge clarified the purpose of the trial counsel's argument, reemphasized the appellant's right not to testify, and prevented any prejudice. Based on these facts, we find no plain error and, to the extent the trial counsel's comments were improper, they were harmless beyond a reasonable doubt.

 Moving to sentencing, "Golden Rule" arguments ask the court members to place themselves in the position of the victim or the victim's near relative. They are improper because they seek to inflame the members of the court. *United States v. Baer*, 53 M.J. 235, 237–38 (C.A.A.F.2000). In this case, trial counsel's reference to the members' "kids" not being safe on base "with this guy [the appellant] around" was improper. However, this was but a single reference in a lengthy, six-page argument on sentence. The reference appears to have been the trial counsel's attempt to address the impact of the appellant's misconduct on society and the Marine Corps. In context, the improper argument does not overtly appeal to the emotions of the members in an inflammatory manner. Our finding is confirmed by the fact that the IMC raised no objection at trial. We conclude that, although trial counsel's argument was error, it was neither obvious in the context of his broader argument, nor did it materially prejudice the appellant's substantial rights. Plain error is, therefore, not demonstrated and the appellant is entitled to no relief.

Finally, with respect to the assertion that the trial counsels arguments are prosecutorial misconduct, we note that prosecutorial misconduct is "action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Rodriguez–Rivera*, 63 M.J. 372, 378 (C.A.A.F.2006) (citations and internal quotation marks omitted). We find that the instances of argument cited by the appellant do not rise to the level of prosecutorial misconduct, either individually or cumulatively, and they merit no relief. *See United States v. Doctor*, 7 USCMA 126, 21 C.M.R. 252, 261, 1956 WL 4578 (C.M.A.1956)("It is a little difficult for us to find misconduct which compels a reversal when it purportedly arises out of an argument which had so little impact on defense counsel that they sat silently by and failed to mention it . . . at the time of trial.").

## Challenge of Members

 After the findings were announced, the court recessed for a short period. During that recess, the senior member, Lieutenant Colonel (LtCol) F, saw Staff Sergeant (SSgt) R, a drill instructor in his battalion, and inquired why he was in the law center. SSgt R replied that he was interested in the sentencing of the case, but he did not elaborate. During the subsequent *voir dire* of LtCol F, he acknowledged that he had heard SSgt R's last name during the trial testimony and, given his unique last name, he thought that SSgt R might be TO's stepfather. LtCol F also said that, while he knew SSgt R's last name, he did not know his first name and did not know very much about him. He knew that SSgt R was a drill instructor in his battalion, but he did not have direct interaction with him because, as battalion commander, LtCol F worked through company commanders and First Sergeants. When the military judge asked whether the knowledge that SSgt R was TO's stepfather would influence LtCol F's deliberations in any way, LtCol F said, "No." Record at 441. Thereafter, the appellant declined two opportunities to conduct his own *voir dire* of LtCol F regarding his relationship with SSgt R. Record at 441–43. The appellant then challenged LtCol F for cause under R.C.M. 912(f)(2)(B).[7] The military judge denied the challenge, finding that the senior member's *voir dire* responses were "clear, reassuring and unequivocal with regard to his impartiality." Record at 443. He also found that SSgt R was not a member of the LtCol's family, but a staff noncommissioned officer in

---

7. Following the pretrial *voir dire* of LtCol F, the appellant had not challenged him for any reason.

Record at 271–72.

the LtCol's battalion with whom he had no regular contact.

R.C.M. 912(f)(1)(N) requires removal for cause when "'the member should not sit in the interest of having the court-martial free from substantial doubt as to legality, fairness and impartiality.'" *United States v. Strand,* 59 M.J. 455, 458 (C.A.A.F.2004)(quoting *United States v. Miles,* 58 M.J. 192, 194 (C.A.A.F.2003)). This rule encompasses both actual and implied bias. *Id.* A military judge's ruling on a challenge for cause is ordinarily reviewed for abuse of discretion. *United States v. Armstrong,* 54 M.J. 51, 53 (C.A.A.F. 2000) (citations omitted). The military judge is entitled to great deference when deciding whether actual bias exists, because it is a question of fact. *United States v. Napolitano,* 53 M.J. 162, 166 (C.A.A.F.2000). He is given less deference when we review his "finding on implied bias because it is objectively 'viewed through the eyes of the public.'" *Id.* (quoting *United States v. Warden,* 51 M.J. 78, 81 (C.A.A.F.1999)). The proper standard of review for implied bias is "less deferential than abuse of discretion but more deferential than de novo." *Strand,* 59 M.J. at 458 (citations and internal quotation marks omitted). "[I]mplied bias exists when, regardless of an individual member's disclaimer of bias, most people in the same position would be prejudiced [i.e. biased]." *Id.* at 459 (citations and internal quotation marks omitted); *accord, United States v. Townsend,* 65 M.J. 460 (C.A.A.F.2008). In making a determination about implied bias, we consider the totality of the factual circumstances. *Id.*

Applying the above standards, we find no abuse of discretion by the military judge in finding no actual bias. He considered the professional nature and the limited contacts of the relationship between LtCol F and SSgt R, and found the senior member's responses to be "clear, reassuring and unequivocal" regarding his actual ability to remain impartial. The facts of record support the military judge's decision, particularly considering that we did not see and hear LtCol F.

We also agree with the military judge that there is no implied bias in the relationship of LtCol F and SSgt R. The facts show the two had no personal relationship. Indeed, LtCol F did not know the SSgt's first name and, prior to seeing him at the law center, LtCol F did not know that SSgt R was TO's step-father. The relationship of LtCol F and SSgt R was limited to that of senior-subordinate, with indirect interaction via intermediates in a military chain of command. We do not believe that most people in the position of LtCol F, a field grade officer in command of a battalion, would be biased in favor of one among several staff sergeants in his command, such that he could not set aside this limited professional relationship and fulfill his oath as an impartial court-martial member.[8] Additionally, we do not believe that a member of the public, in possession of all the facts, would view the situation as unfair. *See Strand,* 59 M.J. at 460 (service by convening authority's son as president of court-martial did not raise a significant question of legality, fairness, or impartiality, to the public observer pursuant to the doctrine of implied bias). Absent actual or implied bias, this issue is without merit.

**Cruel and Unusual Punishment**

■ Prior to invoking judicial intervention for alleged violations of Article 55, UCMJ, 10 U.S.C. § 855, or the Eighth Amendment, "a prisoner must seek administrative relief." *United States v. White,* 54 M.J. 469, 472 (C.A.A.F.2001). Absent some unusual or egregious circumstance, this includes demonstrating that he has exhausted the prisoner-grievance system, including a petition for relief under Article 138, UCMJ, 10 U.S.C. § 938. *Id.*

■ The record indicates that the appellant made several complaints to brig authorities regarding his confinement and the behavior of brig personnel. These include Article 1150, UCMJ, complaints to the Commanding Officer of Naval Consolidated Brig, Charleston, and a Request Mast to the Commanding General of Marine Corps Recruit Depot, Parris Island. The appel-

---

**8.** The R.C.M. 807 oath provides that a member will "faithfully and impartially try, according to the evidence, your conscience, and the laws applicable to trial by court-martial, the case of the accused now before this court." R.C.M. 807(b)(2), Discussion.

lant's complaints were reviewed and addressed by brig officials and the Commanding General. Thereafter, the appellant did not make an Article 138, UCMJ, complaint for additional relief. We conclude that, if action taken by the various officials was not adequate, the requisite administrative exhaustion of remedies required to invoke our review has not occurred. Additionally, we are unable to find any "unusual or egregious" circumstance that would prompt our review despite a failure to exhaust administrative remedies. As a result, we find the issue is not ripe and we decline to review it.

### Cumulative Error

Having found the other assertions of error to be without merit, they are insufficient to invoke the doctrine of cumulative error. *United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F.1999).

### Unreasonable Multiplication of Charges

Finally, we considered the appellant's assertion that the charges of which he was found guilty constitute an unreasonable multiplication of charges. This claim is without merit. *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F.2001). We will not discuss it further. *United States v. Matias*, 25 M.J. 356, 361 (C.M.A.1987).

### Conclusion

The findings of guilty and the sentence, as approved by the convening authority, are affirmed.

Senior Judge FELTHAM and Judge MITCHELL concur.