# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, T.H. CAMPBELL, T.J. STINSON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**DARREN B. YAZZIE**
**GAS TURBINE SYSTEM TECHNICIAN FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201500159**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 9 January 2015.
**Military Judge:** CAPT Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southwest, San Diego, CA.
**Staff Judge Advocate's Recommendation:** CDR D.J. Jones, JAGC, USN.
**For Appellant:** LT Ryan Aikin, JAGC, USN.
**For Appellee:** Maj Tracey Holtshirley, USMC; Capt Cory Carver, USMC.

**31 May 2016**

---

## OPINION OF THE COURT

---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

CAMPBELL, Judge:

A general court-martial panel of officer members convicted the appellant of a six-week unauthorized absence ended by apprehension and the rape of a child under the age of twelve, violations of Articles 86 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 920 (2012).[1] The convening authority approved the adjudged sentence of 17 years' confinement, total forfeitures, reduction to pay grade E-1, and a dishonorable discharge.

---

[1] The members found the appellant not guilty of aggravated sexual contact with a child under the age of twelve and anal sodomy with a child under the age of twelve, alleged as violations of Articles 120 and 125, UCMJ.

The appellant contends that the military judges assigned at different trial stages abused their discretion by denying his request to depose the victim and his challenge to remove a court-martial member for cause. Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and his active duty wife separated in 2010. Their three children moved into military housing with the appellant's wife. The appellant continued seeing the children for several months, but his relationships with them effectively ended in all respects by April 2011. The divorce was finalized in October 2011.

On 9 February 2014, the appellant's then 12-year-old daughter, A.Y., disclosed to her mother that the appellant had sex with her when she was younger. The next day, A.Y. also told her middle school administrators about the abuse, triggering a law enforcement investigation. During a 19 February 2014 forensic interview, A.Y. again reported having sexual encounters with the appellant—anal sodomy once before her parents separated and repeated episodes of unclothed penile/vaginal contact at his apartment after the marital separation.

The appellant admitted to Naval Criminal Investigative Service (NCIS) that he began a "sexual relationship" with A.Y. during 2010.[2] In a written, sworn statement, he explained:

> It started out with [A.Y.] crawling into my bed at night and she would lay on top of my stomach . . . to listen to my heart beat. . . . After two months, I started to become aroused when [A.Y.] would come into my bed and lay on top of me. . . . [A.Y.] would come into bed with her clothes on and when I would become aroused I would then take her clothes off and I would then take my boxer shorts off. [A.Y.] would continue to lay on top of me, with her whole body, and I would move her up and down on my body, while she would use her legs to help. I only intended to rub my penis on the outside of her vagina and on her buttocks. I never intended for penetration to occur. When I heard that [A.Y.] said I penetrated her, I felt bad. . . . I don't recall ever ejaculating. If [A.Y.] had any fluids on her, it came from my penis, but it wasn't ejaculation.[3]

## Analysis

### I. *Victim's Deposition*

The defense received a video recording of A.Y.'s forensic interview once charges were preferred. Although the appellant's ex-wife testified as a prosecution witness in his August 2014 Article 32, UCMJ, hearing, she did not allow her child's participation in order to avoid further

---

[2] Prosecution Exhibit 6 at 1; Record at 971-75.

[3] PE 6 at 1.

"trauma."[4] Citing the same concerns, she also prevented prosecutors and the trial defense counsel from interviewing A.Y. The convening authority did not approve the defense request to depose A.Y. After charges were referred to trial, the defense filed and litigated a deposition motion. The military judge denied the motion. Thus counsel for neither party spoke with A.Y. about the allegations before her trial testimony in January 2015.[5]

The decision to deny a deposition is reviewed for an abuse of discretion. *United States v. Cutler*, 806 F.2d 933, 935-36 (9th Cir. 1986). A military judge abuses his discretion when his findings of fact are clearly erroneous or his decision is influenced by an erroneous view of the law. *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005).

The appellant contends that *United States v. Chestnut*, 2 M.J. 84 (C.M.A. 1976), *United States v. Chuculate*, 5 M.J. 143 (C.M.A. 1978), and *United States v. McDowell*, 73 M.J. 457 (C.A.A.F. 2014) support a holding that the military judge abused his discretion in denying the defense motion and requires that the conviction be overturned. We agree, in part. Contrary to the military judge's ruling, we hold that Article 49(a), UCMJ, and RULE FOR COURTS-MARTIAL 702, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) provided him authority to grant the deposition request, but we find no prejudice resulted from the abuse of discretion.

a.   Abuse of Discretion

In his findings of fact, the military judge determined that the Article 32 officer concluded A.Y. was unavailable at the hearing because A.Y.'s mother prohibited the child's further participation in the pretrial process. Consequently, neither party had access to A.Y. But both parties had access to A.Y.'s mother, who was present and available at the Article 32 proceedings. The military judge also found that the parties had access to A.Y.'s statements during the forensic interview; all documentation about A.Y.'s statements to school officials, her mother, and a school friend; and copies of A.Y.'s statements and records from the Navy Family Advocacy Program and San Diego County Health and Human Services Agency. He also found that A.Y. was available to testify at trial. We concur and adopt these findings of fact as our own.

The provisions of Article 32, UCMJ, effective during the appellant's court-martial provide, in relevant part:

No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made. . . . At that investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything

---

[4] *Id.* at 66.

[5] A.Y. testified during one pretrial motion session which was closed pursuant to MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Her testimony was limited to the motion and did not address allegations against the appellant. Record at 618-28.

3

he may desire in his own behalf, either in defense or mitigation, and the investigation officer shall examine available witnesses requested by the accused.[6]

The version of RCM 702(a) in effect at the time of the appellant's trial provides that "[a] deposition may be ordered whenever, after preferral of charges, due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness be taken and preserved for use at an investigation under Article 32 or a court-martial."[7]  Under that version of RCM 702(c)(3)(A), "[a] request for a deposition may be denied only for good cause," and that provision's Discussion section addresses the circumstances at issue here:

> The fact that the witness is or will be available for trial is good cause for denial [of a request to depose a witness] in the absence of unusual circumstances, such as improper denial of a witness request at an Article 32 hearing, *unavailability of an essential witness at an Article 32 hearing*, or when the Government has improperly impeded defense access to a witness.

(Emphasis added).

In the "Statement of the Law" section of his ruling, the military judge included, "A deposition may be used as a discovery tool only in limited circumstances, such as if the Government has interfered with the defense's access to a potential witness, or the discovery process has been frustrated."[8]  The military judge then cited various Federal, non-military cases in support of the proposition that "an accused is not entitled to a pretrial interview with a witness otherwise available for trial."[9]  After his findings of fact, the military judge reached the conclusion that, "in the absence of impeded discovery rights or witness access, there is simply no authority to force a civilian witness to participate in a pretrial interview or a deposition when the witness will be available for trial."[10]  He then ruled there were no impeded witness access or

---

[6] The appellant's Article 32 hearing was conducted on 29 July 2014.  Section 1702 of the National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA) limited the scope of Article 32 proceedings and changed their titled from "pretrial investigations" to "preliminary hearings."  But those changes were not effective until December 2014, with the technical revisions of Section 531, FY15 NDAA.

[7] This same exceptional circumstances standard was codified on 19 December 2014, when Section 532 of the FY15 NDAA amended Article 49, UCMJ.  On 17 June 2015, with Executive Order (E.O.) 13696, the President amended RCM 702(a) to, *inter alia*, provide: "[a] victim's declination to testify at a preliminary hearing or . . . to submit to pretrial interviews shall not, by themselves, be considered exceptional circumstances. . . .  [T]he convening authority or military judge may order a deposition of a victim only if it is determined, by a preponderance of the evidence, that the victim will not be available to testify at court-martial."  But given their 17 June 2015 effective date, our analysis does not reach the E.O. 13696 changes to RCM 702.  The appellant filed his motion for an oral deposition, Appellate Exhibit VI, on 20 October 2014, and the military judge's ruling denying the deposition, Appellate Exhibit XXVIII, was issued on 15 December 2014.

[8] Appellate Exhibit XXVIII at 2.

[9] *Id.* (citing *Blackmer v. United States*, 284 U.S. 412 (1932); *United States v. Tejeda*, 974 F.2d 210 (1st Cir. 1992); *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979); *United States v. Long*, 449 F.2d 288 (8th Cir. 1971)).

[10] AE XXVIII at 5.

discovery rights issues, and that "[e]xceptional circumstances do not exist to warrant a pretrial deposition of A.Y," before denying the defense motion.[11]

As the military judge's ruling suggests, there are jurisdictions firmly adhering to constitutional protections in which criminal defendants have no right to pretrial interviews or depositions. *See, e.g., People v. Panah*, 35 Cal. 4th 395, 458 (2005) (noting that in California, "[a] defendant has a 'right to the names and addresses of prosecution witnesses and a right to have an opportunity to interview those witness *if they are willing to be interviewed,*'" but that "[a] defendant does not have a fundamental due process right to pretrial interviews or depositions of prosecution witnesses.") (citations omitted, emphasis in original). However, our superior court has explained that "[t]here is a hierarchy of sources of rights in the military." *United States v. Marrie*, 43 M.J. 35, 37 (C.A.A.F. 1995). "Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules that are constitutional and provide greater rights for the individual; for example . . . Article 31, UCMJ, 10 U.S.C. § 831, requiring warnings to suspects not in custody." *Id.* (quoting *United States v. Taylor*, 41 M.J. 168, 169-70 (C.M.A. 1994), *cert. denied*, 115 S. Ct. 1108 (1995).

In *Marrie*, the Court of Appeals for the Armed Forces (CAAF) noted that if Article 32 investigation witness availability issues were approached "as a constitutional question," specifically "from a Sixth Amendment confrontational perspective," instead of "as a Manual [for Courts-Martial] question," then "the accused would not have a constitutional right to confront a witness at a . . . preliminary hearing." *Id.* (citing *Goldsby v. United States*, 160 U.S. 70 (1895)). The right existed only because the Manual for Courts-Martial (MCM) provisions regarding Article 32 testimony in RCM 405(g), at that point, were "much broader than the Sixth Amendment right at preliminary hearings and grand juries." *Id.* The question here is whether, at the time of his trial, the MCM, not the United States Constitution, authorized the military judge to grant a deposition of A.Y.

This court analyzed the purpose of depositions in *United States v. Cabrera-Frattini*, 65 M.J. 950 (N-M. Ct. Crim. App. 2008)—a case in which the military judge ordered an oral deposition of a victim who was a minor, did not testify at the Article 32 hearing, and only later became unavailable to testify at trial. Noting that the analysis of RCM 702(a) indicates that Federal courts have consistently construed its Federal Rules of Criminal Procedure counterpart as a means to preserve testimony, and not as a discovery vehicle, *Cabrera-Frattini* found that depositions' primary purpose under RCM 702(a) is also to preserve testimony for future trial use. *Id.* at 952-953. However, it also determined that "[m]ilitary practice provides for somewhat more flexible use of depositions in circumstances unique to the military," and cited *Chestnut* as an example where depositions are used for "securing the sworn testimony of a witness prior to trial who was improperly found to be unavailable at an Article 32, UCMJ, investigation." *Id.* at 953. Citing *Chuculate* as another example, it continued, "Additionally, as in this case, a deposition may be ordered to allow the defense an opportunity to cross-examine an essential witness who was not available at the Article 32, UCMJ, investigation." *Id.*

---

[11] *Id.*

In some respects, *Chestnut* is clearly distinguishable from this case. First, the military judge in *Chestnut* erroneously relied upon the Article 32 investigating officer's assumptions, rather than evidence, regarding the victim's unavailability at the Article 32 hearing. Here, the investigating officer and the military judge both properly found that A.Y. was unavailable at the appellant's Article 32 proceeding. A civilian witness' refusal to appear at an Article 32 hearing renders the witness unavailable. RCM 405(g)(2)(B), Discussion. A minor's parents have the authority to decide whether the minor will appear at that pretrial forum. *United States v. Marrie*, 39 M.J. 993, 997 (A.F.C.M.R. 1994), *aff'd*, 43 M.J. 35 (C.A.A.F. 1995). A.Y.'s mother unambiguously prohibited the child's participation. Also, the military judge in *Chestnut* granted a defense continuance at the very beginning of the trial in order to allow the trial defense counsel to meet with the victim, in lieu of the requested deposition. 2 M.J. at 86 (Cook, J., dissenting in part). Other than taking a recess—less than 15 minutes—to review a portion of A.Y.'s forensic interview between her direct and cross-examination testimony, the appellant neither requested nor received a continuance and never requested to interview A.Y. once she was present at trial.

But there are important similarities, too. Like the investigative materials related to A.Y. and her trial availability, the defense in *Chestnut* received the civilian rape victim's "sworn statement to the prosecution in which she confirmed both [her] identification [of the appellant in that case as her assailant] and her ability to testify at any upcoming trial" before the Article 32 investigation. *Chestnut*, 2 M.J. at 85. And even though the continuance in *Chestnut* allowed the defense to "'extensively' interview[] the witness informally" before she testified at trial, *Id.* at 86 (Cook, J., dissenting, in part), our superior court set aside the conviction when the appellant, without a deposition, never "examined the prosecutrix under oath prior to trial." *Id.* at 85 (majority opinion). Denying the requested deposition of A.Y. resulted in the same trial preparation deficiency, but of an even greater magnitude given the absence of any defense pretrial interviews of the alleged victim in this case.

In *Chuculate*, the Court of Military Appeals found that the Article 32 investigating officer's decision to deny the defense request for two civilian witnesses, including the victim, based on their refusal to attend, "deprived the accused of a substantial pretrial right." 5 M.J. at 144. Over defense objection, the investigating officer considered the civilians' sworn statements about the alleged incident. Despite the adverse impact on "his Article 32 rights to cross-examin[e]" the Government's witnesses, *Id.* at 146 n.8, there was "no adverse effect at trial," *Id.* at 146, since "the defense counsel had extensive interviews with both of the witnesses" and "consequen[tly] was given sufficient discovery of their knowledge" before trial. *Id.* at n.9. With the defense interviews and its failure to file a motion to depose, the court found "no good reason in law or logic to set aside [the] conviction." *Id.* at 146 (internal quotations omitted).

The civilian victim in *McDowell*, uniquely, was both available and unavailable as an Article 32 hearing witness. The trial defense counsel interviewed her for three hours the day before she completed direct examination and more than two hours of cross-examination. 73 M.J. at 458 (Baker, C.J., concurring). But just as the trial defense counsel began inquiring about the events on the day of the alleged crime, she left the witness stand and ended her participation. Granting a deposition, the military judge "concluded, due to the exceptional circumstances of this case, it is in the interest of justice that the testimony of [the witness] be taken and preserved." *Id.* at 458-59 (internal quotations omitted, alterations in original). The CAAF

summarily affirmed the lower court's denial of the Government's petition for extraordinary relief challenging the military judge's deposition ruling. Thus, while *McDowell's* applicability here is limited by the standard in that case, it nonetheless demonstrates that the military judge's authority to grant depositions is unchanged by pending, but not yet effective, legislative amendments regarding victims' participation rights relative to Articles 32 and 49, UCMJ.[12]

Despite binding authority, the Government relies on this court's unpublished opinion in *United States v. Elsevier*, 2002 CCA LEXIS 34 (N.M.Ct.Crim.App. 19 Feb. 2002), for the proposition that the "refusal of [a] civilian child victim to appear as a witness at an Article 32 pretrial investigation and subsequent refusal to be interviewed prior to trial does not warrant compelled deposition."[13] The deposition issue raised in that case is styled as a law-of-the-case doctrine violation. To the extent that the court directly addresses the deposition requests, its analysis is significantly limited in that it considers the "improper denial of a witness request at an Article 32 hearing" as an example of "unusual circumstances" in R.CM. 702(c)(3)'s Discussion section without reaching the "unavailability of an essential witness at an Article 32 hearing"— which was also specifically at issue and, more importantly, is at issue here. *Id.* at \*15-\*18.

We conclude that the military judge's decision to deny the deposition request was based on an erroneous view of the law—specifically, an understanding that exceptional circumstances for a deposition did not exist due to his lack of authority to force a civilian witness available for trial to participate in a pretrial interview or a deposition. The statutory and regulatory provisions in Articles 32 and 49, UCMJ, and RCM 405 and 702 applicable at the time and controlling precedent indicate otherwise. Therefore, there was an abuse of discretion.

b. Prejudice

Given the implications on defense trial preparations, the appellant contends that we need not reach prejudice in order to set aside the appellant's convictions. However, "prejudice is not presumed," even where an abuse of discretion clearly "limit[s] defense counsel's ability to confront and cross-examine the [Government's] key witness." *United States v. Bins*, 43 M.J. 79, 86 (C.A.A.F. 1995). If the error here is constitutional, as the appellant suggests, "we must be satisfied beyond a reasonable doubt that the error was harmless." *United States v. Alameda*, 57 M.J. 190, 199-200 (C.A.A.F. 2002) (citing *Chapman v. California*, 286 U.S. 18, 24 (1967)). If the error is non-constitutional, "we must be satisfied that 'the judgment was not substantially swayed by the error.'" *Id.* at 200 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

---

[12] Various provisions within UCMJ Articles 6b, 32 and 49, and RCM 405 and 702, among many others, have recently changed. Victims, whether military or civilian, are no longer required to participate in preliminary hearings under Article 32, and they may challenge a deposition order directly to service Courts of Criminal Appeals. FY16 NDAA Section 531 amendments to Article 6b(e), UCMJ, effective as of 25 November 2015, added, "If the victim of an offense under this chapter is subject to an order to submit to a deposition, notwithstanding the availability of the victim to testify at the court-martial trying the accused for the offense, the victim may petition the Court of Criminal Appeals for a writ of mandamus to quash such order."

[13] Government's Brief of 24 Feb 2016 at 19.

The increased purposes of depositions at courts-martial deriving solely from the MCM make the less onerous standard appropriate here. However, even if we apply the greater standard, under which we consider the entire record to determine "whether the error had or reasonably may have had an effect upon the members' findings," *Bins,* 43 M.J. at 86 (citation omitted), we are convinced beyond reasonable doubt that any error here did not impact the members' guilty findings.

A.Y. testified consistently with the allegations she initially provided, in various levels of detail, to her mother, school friend, school officials, and forensic interviewer. Both parties had information involving those reports months before trial. The defense had pretrial access to A.Y.'s mother and other witnesses with whom the child had discussed the allegations. Consequently, even with no pretrial deposition, the defense could explore at trial the potential challenges to A.Y.'s credibility, as cited in the deposition motion, based on the facts and circumstances of her allegations. *See, e.g. Elsevier,* 2002 CCA LEXIS 34 at *18 ("The appellant had copies of the two videotaped interviews of [the civilian child victim] that the defense used to point out prior inconsistent statements by her. . . . Therefore, even assuming error, we find no prejudice."). The defense apparently found no need to request a trial continuance during or after A.Y.'s testimony in order to address matters resulting from the lack of an earlier deposition.

And beyond A.Y.'s accounts, the appellant's own incriminating statements were the most significant aspects of the Government's case, as the trial defense counsel noted.[14] *See United States v. Williams*, 40 M.J. 216, 219 (C.M.A. 1994) (finding that though "appellant's right to confrontation [of the key prosecution witness in his trial] was somewhat limited by the military judge's ruling . . . we are convinced any error was harmless beyond a reasonable doubt" because the appellant's "inculpatory conduct" and incriminating statements to police made it such that appellant's conviction "scarcely hinged upon [that witness'] credibility") (citations and internal quotation marks omitted). The appellant's words were emphasized during the Government's opening statements and in closing arguments. Ultimately, the relative value of the Government's evidence is reflected in the trial results. After observing A.Y. testify about all of the alleged sex offenses, the members convicted the appellant only of rape and unauthorized absence. Significantly, the rape was alleged to have occurred as part of the relationship and during the timeframe about which the appellant provided confessions and admissions to NCIS.

## II. *Member's Challenge for Cause*

During group *voir dire*, three court-martial panel members, including LCDR C., agreed with the assistant trial defense counsel's (ADC) statement that "NCIS rarely suspects a person of a crime [that the person] didn't commit."[15] In individual *voir dire*, LCDR C. explained what he meant as the ADC questioned him further:

---

[14] "The Government's case centered on a written statement signed by [the appellant] on 20 June 2014, in which he purports to confess to molesting his daughter, A[.]Y." Defense Clemency Request of 6 May 2015 at 1.

[15] Record at 474.

MBR: I had an opportunity to work with NCIS when I was on my ship. You know, dealing with another issue. One of the things that they did tell me about just in the brief description of what they do is they do not believe – I'm sorry, that the case has merit and they would either put it back with the command or, you know, delegate it back down to the lowest, you know, echelon to deal with the issue, i.e., would be the ship.

ADC: So from your perspective, cases that have merit – that NCIS believes have merit go forward and if they don't, they don't?
MBR: That is correct.[16]

The ADC asked LCDR C. about his exposure to children before transitioning into the following exchange:

ADC: It's normal [to not have much interaction with children] if you don't have them obviously. I will ask this question though: Do you think that kids lie about important things or just the small stuff?
MBR: The small stuff.

ADC: Why do you believe that?
MBR: I think it deals with the consequences. If it's something small and they know they can get away with it, then they will lie. If it's something serious knowing that they could possibly, you know, cause, you know, serious problems, consequences, then I would think that there were be a less probability that, you know, they would lie.

ADC: And you believe the kids, themselves, would go through this thought process possibly?
MBR: Yes.

ADC: Now, are there any reasons why a child would lie about being sexually molested?
MBR: Not that I can think of.

The ADC then asked about other topics, and the trial counsel (TC) followed with only these questions to conclude this member's individual *voir dire*:

TC: Lieutenant Commander, I'm going to go back to when you were talking about NCIS, your working with NCIS.
MBR: Yes.

TC: And you said something about they only forward up cases where they believe have merit.
MBR: That's correct.

---

[16] *Id.* at 550.

TC:    Okay.  With that, NCIS are people, correct?
MBR: That is correct.

TC:    And people can be fallible?
MBR: That is correct.

TC:    All right.  Is your belief that NCIS could actually, as people, get something wrong?
MBR: That is correct they could get something wrong.

TC:    And you understand that in this setting, you are the fact finder, correct? You are the person that makes the decision.
MBR: That is correct.

TC:    It's not NCIS's decision about whether or not the accused is or is not guilty.  It's your decision.
MBR: That is correct.

TC:    Okay.  Are you capable of making that decision impartially without saying just because NCIS filed a case – are you able to put that aside?
MBR: Yes, I am.

TC:    Okay.  All right.  Thank you.[17]

LCDR C. remained on the panel after the defense unsuccessfully challenged him for cause and used a preemptory challenge on a different member.

RULE FOR COURTS-MARTIAL 912(f)(1), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012), provides, "A member shall be excused for cause whenever it appears that the member . . . [s]hould not sit . . . in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."  The rule "encompasses 'both actual bias and implied bias.'"  *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)).  R.C.M. 912(f)(3) specifies, "The burden of establishing that grounds for a challenge exist is upon the party making the challenge."

The ADC argued two bases for challenging LCDR C. for cause:

I'll start with actual bias and this is an actual bias that was placed in favor of law enforcement at least from our perspective, it was in favor of law enforcement.  In particular, the response we received during voir dire [was that LCDR C.] worked with NCIS and, quote, they only send cases they believe have merit.

The defense's concern here is, again, back to this inelasticity to the possibility that an individual agent may have done something wrong.  And there is something

---

[17] *Id.* at 555-56.

else and I don't know if the court recognized this during the responses, but he was very thoughtful in his responses as if when the question was asked, he thought for a moment, and then made a statement such as that. It indicates to the defense that that particular individual has an actual bias in favor of law enforcement as opposed to listening to what has transpired. It's basis one.

The secondary basis under implied bias. His response to one of my questions with respect to children in making up of allegations. I believe his response was children wouldn't make up an allegation of sexual abuse, sexual molestation. And that demonstrates --[18]

The military judge then began a dialog with the parties regarding the appellant's challenge:

MJ: Actually, I think what he said was he can't think of a reason that kids would lie about it, so that's a little different than saying they wouldn't. He just could not think of one when you were asking him.
ADC: Yes, ma'am.

MJ: So if he can't think of one, does that mean he should be stricken because he can't think of one when put on the spot about it?
ADC: Yes, ma'am, absolutely. So if you take those two different statements. I can't think of a reason why a child would lie about sexual abuse. It's very similar to wouldn't make up an allegation. He's telling us that, all right, you've just asked a question is this possible, nope. I can't really think of a reason. I guess the term of art in the way he responded to the question as opposed to him not being about to think of something.

MJ: [Trial Counsel]?
TC: Your Honor, going in reverse order, the notes I have as well as the when put on the spot, just because he couldn't come up or think of a reason as to why a child would, does not demonstrate an inflexible opinion. That could have been delved into farther, it was not. And as far as NCIS, he did agree that people do make mistakes and NCIS can be fallible. They are people. He was able and open to that concept.

MJ: Anything else?
TC: And that's all I have.

MJ: All right. I'm going to deny the defense challenge on [LCDR C.]. He indicated he would follow the instructions. He also indicated in response to the government's questions that NCIS agents are – let me get you the words he actually used – they can be fallible and can get it wrong. He understands that he is the fact finder and it's his decision and is able to put his prior experiences with NCIS aside in this case.

---

[18] *Id.* at 695.

So since he is able to follow my instructions and I find his answers to be, as defense even pointed out, thoughtful, I will deny the defense challenge in consideration of the liberal grant mandate. I don't find any actual or implied bias with [LCDR C.][19]

Under these circumstances, we consider whether the military judge correctly denied the challenge for cause under each basis.

a. Actual Bias

"Actual bias is reviewed subjectively, through the eyes of the military judge or the court members." *Warden*, 51 M.J. at 81 (citations and internal quotations omitted). It occurs when the bias of any member "is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 2007) (internal quotation omitted). A military judge's decision to grant or deny a challenge for cause based on actual bias is reviewed for an abuse of discretion. *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006). Given their physical presence during *voir dire*, military judges are provided significant latitude on their factual determinations of whether actual bias exists. *Id.*.

According to the appellant, LCDR C.'s agreement with the proposed notion that NCIS rarely suspects individuals who are not guilty and that their cases with merit go forward while others do not demonstrates actual bias. Viewed in a vacuum, those responses may imply a favorable view of NCIS. But considering their full *voir dire* context, it is clear that LCDR C. did not demonstrate an unyieldingly favorable view, regardless of the eventual trial evidence and military judge's instructions on the law. Nor do they demonstrate that LCDR C. had "formed or expressed a definite opinion as to the guilt or innocence of the accused as to [the] offense charged." R.C.M. 912(f)(1)(M). Instead, he expressly confirmed an ability to keep an open mind, an understanding of the appellant's presumption of innocence, an appreciation for the Government's burden of proof, an acknowledgment of NCIS special agents' human limitations, and a willingness to weigh the evidence during deliberations before reaching a conclusion. Observing LCDR C.'s demeanor throughout the entire *voir dire* process, the military judge found no actual bias. We hold that the military judge did not abuse her discretion in reaching that conclusion.

b. Implied Bias

"Implied bias is viewed through the eyes of the public," focusing "on the perception or appearance of fairness of the military justice system." *Warden*, 51 M.J. at 81 (citations and internal quotations omitted). It exists "when most people in the same position [as the challenged member] would be prejudiced." *Id.* (internal quotation omitted). A military judge's decision to grant or deny a challenge for cause based on implied bias is reviewed with less deference than abuse of discretion, but more than *de novo* review. *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010). Less deference is given when the military judge's analysis on the record is not comprehensive, *Id.* (citing *United States v. Richardson*, 61 M.J. 113, 120 (C.A.A.F. 052005)),

---

[19] *Id.* at 696-97.

and "[i]n cases where less deference is accorded, the analysis logically moves more towards a *de novo* standard of review." *United States v. Rogers*, 75 M.J. 270, 2016 CAAF LEXIS 370, *8 (C.A.A.F. 2016). "A military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007). In fact, "instances in which the military judge's exercise of discretion will be reversed will indeed be rare" when she "considers a challenge based on implied bias, recognizes [her] duty to liberally grant defense challenges, and places [her] reasoning on the record." *Id.*

When the military judge does not apply the liberal grant mandate or the implied bias test, we evaluate whether the appellant met his RCM 912(f)(3) burden of establishing that grounds existed for a challenge based upon a member's implied bias. *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002). In *Downing*, the military judge ruled on an implied bias challenge for cause by initially addressing the challenged member's demeanor before concluding, [t]"here is clearly no actual bias in this case, and folks are friends with folks all over the base, and [the member] said she could clearly set that information aside and I think quite clearly that she can. The challenge . . . is denied." *Id.* at 421. Reviewing that trial ruling, our superior court "decline[d] to conclude . . . that the military judge actually applied the correct test for implied bias" based upon a record that "frames but does not squarely address the essential question -- was the military judge satisfied that an objective public observer would find this level of friendship between the prosecutor and a member of the court-martial panel consonant with a fair and impartial system of military justice?" *Id.* at 422.

The appellant argues that an implied bias resulted from LCDR C.'s previous experience with NCIS and the member's inability to think of a specific reasonreason why a child would lie about being sexually molested. Although the ruling on the challenge for cause against LCDR C. referenced the liberal grant mandate, it must be reviewed with less deference than it otherwise would have been because the military judge neither articulated the implied bias standard nor performed an implied bias analysis on the record. Instead, similar to *Downing*, her discussion with the assistant trial defense counsel framed, but did not address, whether LCDR C. "should be stricken" based upon how an objective public observer would perceive LCDR C.'s inability to think of a reason that a child would lie about being molested when "put on the spot about it."[20]

Nonetheless, we hold that the appellant has not met his burden of establishing that grounds for challenge existed against LCDR C. based on implied bias. On this record, an objective observer aware of Article 25, UCMJ, and the military justice system would readily distinguish between an experienced officer having professional contact with NCIS agents due to unrelated investigations involving his commands' personnel and one who has worked so closely with law enforcement efforts that deference to agents' investigative conclusions might improperly influence his deliberative process as a court-martial member. Similarly, we find such an objective observer would not conclude that this member's inability to state why a child would lie about being sexually molested if asked to do so during individual *voir dire* reflects an inability to appropriately consider an accuser's motives to fabricate if such motives were advanced by counsel based on the evidence or reasonable inferences drawn therefrom.

_____

[20] *Id.* at 697.

13

Considering the totality of the circumstances, an objective member of the public would not have substantial doubt about the fairness of having LCDR C. sit as a member of the appellant's court-martial panel.

## Conclusion

The findings and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge STINSON concur.

For the Court

R.H. TROIDL
Clerk of Court